# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE SCHOOL FOR ARTS | : | |
| IN LEARNING ("SAIL") | : | |
| PUBLIC CHARTER SCHOOL | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **Civil Action No. 06-1821 (TFH)** |
| | : | |
| MICHELLE HAWKINS, et al. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c), finding that Hearing Officer Butler-Truesdale erred in her September 19, 2006 Hearing Officer's Determination ("HOD"), when she excluded the Plaintiff's evidence from the hearing, denied the Motions to Join DCPS as a necessary party, and ordered SAIL to fund placement at the Katherine Thomas School and fund compensatory education in the forms of tutoring and computer software.

In support of its Motion and pursuant to Local Rules 7(a), (c), and (h), the Plaintiff submits its Memorandum of Points and Authorities in Support of its Motion for Summary Judgement, a Statement of Material Facts as to which there is no Genuine Issue, and a proposed Order.

Respectfully submitted,

_____/s/_____

Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE SCHOOL FOR ARTS                    :
IN LEARNING ("SAIL")                   :
PUBLIC CHARTER SCHOOL                   :
                                       :
            Plaintiff                  :
                                       :
        v.                             :        **Civil Action No. 06-1821 (TFH)**
                                       :
MICHELLE HAWKINS, et al.               :
                                       :
            Defendants.                :
_____       :

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

COMES NOW, the Plaintiff, by and through undersigned counsel, and requests that this

honorable Court grant a summary judgment pursuant to Federal Rule of Civil Procedure 56(c),

finding that Hearing Officer Butler-Truesdale erred in her September 19, 2006 Hearing Officer's

Determination ("HOD"), when she excluded the Plaintiff's evidence from the hearing, denied the

Motions to join DCPS as a necessary party, and ordered SAIL to fund placement at the Katherine

Thomas School and fund compensatory education in the forms of tutoring and computer

software.

**FACTUAL BACKGROUND**

D.H.  is a fourteen year old, special education student who attended SAIL as a seventh

grader until May of 2006.  The student began his attendance at SAIL in April of his first grade

year. AR at 6.  SAIL is a District of Columbia Public Charter School which has elected to be

its own local education agency ("LEA") under IDEA, for special education issues.  DCPS is the

state education agency ("SEA") which is responsible for overseeing all District of Columbia

LEAs, and is responsible to step in and provide services for students when the LEA is unable to do so. AR at 725, 729, 730. SAIL, as its own LEA, can only place students within its jurisdiction. Only DCPS, as the state educational agency ("SEA"), can place students in an alternative LEA.

D.H. had an individualized educational program / plan ("IEP") and had been receiving special education services since approximately the second grade. Tr. at 266. In February and March, 2005, SAIL conducted an occupational therapy ("OT") evaluation. AR at 655-676. On March 21, 2005, an IEP was developed for D.H. at SAIL providing 32 hours of specialized instruction and related services. The parent signed the IEP indicating her agreement with the contents. AR at 702. On March 29, 2005, a psychological evaluation was conducted. AR at 677-681. On June 20, 2005, SAIL conducted a speech and language evaluation. AR at 651-654.

On March 15, 2006, an IEP was developed for D.H. at SAIL providing 32 hours of specialized instruction and related services. The parent signed the IEP indicating her agreement with the contents. At the March 15, 2006 IEP meeting, SAIL provided the parent with a copy of her procedural safeguards. AR at 686 - 88, 701. On March 27, 2006, a neuropsychological evaluation was conducted. AR at 636-650. While attending SAIL, the student was receiving specialized instruction, speech language therapy, and occupational therapy. AR at 686-690.

On June 26, 2006, the parent filed a due process complaint alleging, *inter alia*, that SAIL failed to develop and appropriate IEP, issue an appropriate notice of placement, deliver appropriate services, evaluate the student, provide appropriate specialized instruction and related services, and provide an appropriate placement. AR at 20-25. On July 6, 2006, SAIL filed a Motion to Dismiss, or in the alternative, Join DCPS as a Party since placement was a main issue in the case. AR at 29-30. On July 7, 2006, DCPS filed a Motion to Dismiss. AR at 32-35. The

2

parent filed an Opposition to SAIL's Motion and DCPS's Motion on July 13, 2007.  AR at 37-
45.  The case had not yet been assigned to a Hearing Officer, and thus Chief Hearing Officer
David Smith ruled on the Motions.  The Hearing Officer denied SAIL's Motion and granted
DCPS's Motion.  AR at 46.  While the Order was written on July 13, 2006, it is not clear what
date the Student Hearing Office issued the order or what date the parties received the Order.

On July 14, 2006, SAIL convened a Resolution Meeting.  Representatives from SAIL,
DCPS and the parent and her attorneys participated in the meeting.  AR at 74, 86, 87.   At the
Resolution Meeting, the parties discussed that the parent was requesting a private school
placement for the 2006-2007 school year.  Dr. Peggy Peagler, DCPS placement specialist, stated
that she did not have enough information on D.H. to determine placement at that time.  SAIL
agreed to forward all relevant placement information to DCPS and the parent agreed to forward
acceptance letters from private schools to DCPS. AR at 74, 86, 87.  The parties agreed to
reconvene a placement meeting to discuss and determine placement for the 2006-2007 school
year.  The parties scheduled the placement meeting for August 8, 2006.  AR at 54, 74, 86, 87.

On August 1, 2006, SAIL renewed its Motion to Join DCPS as a necessary party based on
the new facts coming out of the July 14, 2006 meeting and that DCPS had assumed responsibility
for and jurisdiction over the placement of the student.  AR at 49-51.  The parent filed a response
to SAIL's Motion on August 4, 2006 arguing that once DCPS assumes responsibility for the
student, they would be a necessary party.  AR at 55.  The Motion was not ruled on prior to the
due process hearing.

On August 8, 2006, a placement meeting convened via teleconference with the parent and
her counsel, a representative from SAIL, and a representative from DCPS.  At that placement
meeting, placement for the 2006-2007 school year was discussed. Dr. Peagler of DCPS proposed

3

Prospect Learning Center as the placement for the student.  The parent rejected the placement

due to the fact that, if he had not already, the student would be aging out of the program the same

year.

On July 31, 2006, the SHO issued a Hearing Notice scheduling the due process hearing

for August 30, 2006.  AR at 47- 48.  Counsel for SAIL inadvertently noted on his calendar that

the hearing was scheduled for August 31, 2006, rather than August 30, 2006.  Tr. at 11-12.

Counsel for the parent submitted her five day disclosure on August 23, 2006.  AR at 600.   Due

to the inadvertent error in noting the wrong hearing date on the calendar,  Counsel for SAIL

submitted his five day disclosure on August 24, 2006.  AR at 81.

On August 30, 2006,  a due process hearing was held in front of Hearing Officer Tonya

Butler-Truesdale.  Tr. at 1 - 411.  The parent made an objection to SAIL's disclosures because

the parent received the documents one day late, outside the five day disclosure rule.   Tr. at 10-

15.  SAIL argued that the documents were already in the parent's possession and thus would not

prejudice the student if admitted into the record.   AR at 4, Tr. at 10-15.  The hearing officer

sustained the parent's objection and excluded SAIL's disclosures from the record.  Tr. at 10-15.

At the hearing, SAIL renewed its Motion to Join DCPS as a Necessary Party because

DCPS had participated in a placement meeting prior to the hearing and proposed Prospect

Learning Center as a placement for the 2006-2007 school year.  Tr. at 15 - 120.  During the

arguments of this Motion, counsel for DCPS admitted that DCPS becomes a necessary party

when the LEA appeals to DCPS as the SEA because it can no longer service the student.  Tr. at

30-31.  Counsel for DCPS also stated that LEA charter schools "do not have an independent right

to issue a placement for a student." Tr. at 61.  The Hearing Officer denied the Motion and

dismissed DCPS from the hearing room. AR at 5; Tr. at 15 - 120, specifically 119-120.

4

Throughout the hearing, counsel for SAIL was prevented from introducing evidence and being able to present a defense to the allegations. Tr. at 1-411.  Additionally, the Hearing Officer prevented SAIL from presenting any evidence, including on cross examination of the parent's witnesses, of the August 8, 2006 placement meeting.  At the hearing, the parent did not produce any evidence regarding a compensatory education plan. Tr. 391-395.

On September 1, 2006, counsel for SAIL submitted a Praecipe regarding the LEA's inability to and the SEA's responsibility to place students outside of the LEA's jurisdiction.  AR at 725-738.  The parent filed an objection to SAIL's praecipe on September 6, 2006. AR at 739. Over the parent's objection, the Hearing Officer considered the praecipe as a matter of equity. AR at 5.  On September 6, 2007, the parent submitted a compensatory education plan, which was not submitted in the parent's five day disclosure.  AR at 742.

On September 19, 2006, the hearing officer issued her determination.  The hearing officer found that SAIL denied the student a free appropriate public education (FAPE) by failing to ensure he made academic progress, failing to ensure the issuance of an appropriate notice of placement, or initiate SEA participation when it was determined that SAIL was not an appropriate placement.  However, the hearing officer also concluded that parent failed to prove that SAIL had not provided for and delivered appropriate instructional and related services pursuant to the IEP.  The hearing officer ordered SAIL to fund the student at The Katherine Thomas School including transportation for the 2006-2007 school year.  SAIL was also ordered to convene an IEP meeting at Katherine Thomas to review and revise the IEP, fund forty-six hours of after school tutoring for reading, fund twenty-three hours of after school tutoring in study skills and organization, and fund Kurzwell and Inspiration software.  AR at 2-12.

## **ARGUMENT**

**The Court should Grant Summary Judgment and Reverse the HOD, because the Hearing Officer Erred and Abused her Discretion.**

The party seeking summary judgment has the initial responsibility of demonstrating the absence of a genuine dispute of material facts through the pleadings, depositions, answers to interrogatories, admissions on file, and in this case the administrative record. *Celortex Corp v.Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56. The nonmoving party must then "go beyond the pleadings and by [its] own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *See Celortex* at 324. In the instant case, the facts are clear when reviewing the administrative record.

The issues in this case are legal in nature because the underlying factual issues are undisputed. The evidence regarding the issues is clear and the facts surrounding them are undisputed in the record which makes this case appropriate for a summary judgment.

I.     **The Hearing Officer abused her discretion and erred when she excluded SAIL's evidence at the hearing, which prejudiced SAIL and thwarted SAIL's ability to present a defense to the due process complaint.**

Pursuant to IDEA and its accompanying regulations, a party may "prohibit the introduction of any evidence at the hearing that has not been disclosed to that party at least five business days before the hearing." 34 C.F.R. § 300.512(a)(3). Additionally, a hearing officer **may** bar a party from presenting evidence not disclosed within the five-day time period. *See* 34 C.F.R. § 300.512(b)(2). The purpose behind this rule is to prevent trial by surprise and to avoid prejudice to either party. However, the hearing officer is given discretion in determine whether

to allow in evidence.  The IDEA also provides that each party to a due process hearing is afforded "the right to present evidence and confront, cross-examine, and compel the attendance of witnesses."  20 U.S.C. § 1415(h)(2).

In the instant case, SAIL made a clerical error in noting the date of the hearing on the calendar.  This error resulted in SAIL submitting its five-day disclosure to the parent's counsel one day past the deadline, but still 4 business days (6 calendar days) prior to the hearing.  Counsel for the parent never in good faith notified the counsel for SAIL to discuss the late filing or to notify him that she would object to his disclosure being late.

When the hearing convened, parent's counsel objected to the late filing of the disclosure.  The hearing officer erred in sustaining the objection and barring SAIL's disclosure from the hearing.  First, the hearing officer is allowed discretion in terms of evidentiary matters.  It is well settled that the strict rules of evidence do not apply in due process hearings.  In fact, the hearing officer herself noted that she maintains a liberal stance on evidentiary matters in order to obtain as much information as possible for making a decision.  Tr. at 14.  Yet the Hearing Officer barred SAIL's disclosures from the hearing.

As SAIL argued at the hearing, the one day late filing was a mere technical error.  The one day late filing did not result in prejudice to the parent, as she had the disclosure four business days and six calendar days prior to the hearing.  Additionally, the documents in the disclosure were documents that the parent already had in her possession, but did not include in her own disclosure.  Thus, none of the documents, or witnesses on the list, were a surprise such as to cause prejudice to the parent.  SAIL, on the other hand, was extremely prejudiced by the hearing officer's ruling to exclude the disclosure.

7

While the disclosure from SAIL only contained a few documents, the witness list was crucial to SAIL's defense.    AR at 81-86.  The transcript of the hearing is full of  instances in which SAIL was unable to present its defense due to the barring of the disclosure.  One of the most important issues for SAIL's defense was the August 8, 2006 meeting, where DCPS proposed a placement for the student.  However, SAIL was barred from bringing up this factor with any of the parent's witnesses.  The transcript is replete with comments and statements from the parent's counsel that there is no disclosure or documentation from SAIL regarding certain issues, including the August 8, 2006 meeting.  Tr. at 87, 89, 93, 100, 101, 103, 110, 118, 132, 148-53, 235, 326, 334, 349, 351, 356, 368, 374, 380, 382.

The hearing officer abused her discretion in sustaining the parent's objection to SAIL's one day late filing.  Such a ruling created a severely prejudicial atmosphere that was impossible for SAIL to overcome.

II.    **The Hearing Officer erred when she failed to add DCPS as a necessary party to the proceedings, after DCPS assumed responsibility and jurisdiction over the student by proposing a placement.**

The hearing officer erred in denying SAIL's Motion to Join DCPS as a Necessary Party. The rules of joinder provide that, *inter alia*, a person "shall be joined as a party in the action if in the person's absence complete relief cannot be accorded among those already parties."  Fed. R. Civ. P. 19(a); *See also* D.C. Super. Ct. R. Civ. P. 19(a).  In the instant case, DCPS was a necessary party, and the hearing officer erred by not joining them as a party.

On July 14, 2006, SAIL convened a Resolution Meeting.  Representatives from SAIL, DCPS and the parent and her attorneys participated in the meeting.  AR at 74, 86, 87.   At the Resolution Meeting, the parties discussed that the parent was requesting a private school

8

placement for the 2006-2007 school year.  Dr. Peggy Peagler of DCPS stated that she did not

have enough information on D.H. to determine placement at that time.  SAIL agreed to forward

all relevant placement information to DCPS and the parent agreed to forward acceptance letters

from private schools to DCPS. AR at 74, 86, 87.  The parties agreed to reconvene a placement

meeting to discuss and determine placement for the 2006-2007 school year.  The parties

scheduled the placement meeting for August 8, 2006.  AR at 54, 74, 86, 87.  At that time, DCPS

was actively investigating placements for D.H.

On August 8, 2006, a placement meeting convened via teleconference with the parent and

her counsel, a representative from SAIL, and a representative from DCPS.  At that placement

meeting, placement for the 2006-2007 school year was discussed. Dr. Peagler of DCPS proposed

Prospect Learning Center as the placement for the student.  The parent rejected the placement

due to the fact that, if he had not already, the student would be aging out of the program the same

year.

At the time in which DCPS agreed to retain jurisdiction over the student and take on the

responsibility for the student's placement for the 2006-2007 school year, DCPS became a

necessary party to the action.  In fact, the parent's counsel even wrote a letter to DCPS after the

resolution meeting, seeking funding for a placement for D.H. AR at 633.  SAIL was further

prejudiced when the hearing officer did not join DCPS.  Tr. at 119, 120, 132, .  As an LEA, SAIL

can only provide services to and placements for students **"enrolled in their schools."**  AR at 9,

citing DCMR Sec. 5-3019.  Once an IEP team determines that the LEA, in this case SAIL, can no

longer meet the needs of the student, and the IEP team writes an IEP to refer to the SEA for

placement, the student is no longer within the LEA's jurisdiction.  It is at that point that the SEA

takes over to determine a placement, which is exactly what happened in the instant case.

9

**III.    The Hearing Officer erred in finding that SAIL failed to issue an appropriate Notice of Placement ("NOP") and ordered SAIL to fund a private placement.**

Pursuant to *Florence County Sch. Dist. Four v. Carter by & Through Carter*, 510 U.S. 7 (U.S. 1993), a court or hearing officer may award a private placement as relief, if the court determines that the school system denied FAPE to the student.  In the instant case, the hearing officer awarded a private placement, but erred in her determination that FAPE was denied.

In analyzing this issue, there are two scenarios to consider.  First, the prior IEPs were not challenged in this complaint.  The complaint can only go back two years, pursuant to the statute of limitations.  *See* 34 C.F.R. § 300.507(a)(2).  Thus, the 2005 and the 2006 IEPs are the only relevant IEPs, and those are the two IEPs that the hearing officer needed consider.

In regard to the 2005 and the 2006 IEPs, the Hearing Officer states, "Insufficient evidence was submitted to support a finding fact that Respondent [SAIL] did not provide for and deliver appropriate instructional and related services pursuant to the IEP since no witnesses testified with respect to the compliance with Petitioner's [D.H.'s] IEPs."  AR at 8.  The hearing officer in her conclusions of law clearly holds that the parent did not meet her burden in proving that SAIL did not provide the services that were on the 2005 and the 2006 IEP.  Therefore, the hearing officer erred in determining that there was a denial of FAPE.

The next prong of this argument rests on the fact that SAIL was in the process of referring the case to DCPS, as the SEA, for an alternative placement for the student.  It was established at the hearing that the parent was no longer happy with SAIL, because during 2006, D.H. was in a different building at the SAIL Upper School that was not as aesthetically pleasing as the SAIL Lower School where he attended for many years.  Tr. at 271 - 272.  The parent never expressed these concerns to SAIL until later in the 2005-2006 school year.  Tr. at 284, 307-309.  While

10

IDEA does not require a school location to be beautiful, SAIL took the parent's concerns to heart and starting working on finding a new placement for D.H.  This was not until the spring of 2006, and the complaint was filed in June of 2006.  Thus, while there is no evidence that SAIL was not fully implementing the 2006 IEP, SAIL did decide to work with the parent on her concerns to find another placement for D.H.  In order to do this, SAIL agreed with the parent that at that point in time, July 14, 2006, SAIL was no longer appropriate. AR at 8.  Hence, SAIL contacted DCPS to move the placement issue forward.

Under both of the above factual outlines, SAIL did not deny FAPE to D.H.  The Hearing Officer plainly states that there is no evidence that SAIL did not fully implement the IEPs while D.H. was at SAIL.  Thus, the hearing officer erred in awarding a private placement, based on no evidence of a denial of FAPE or services.

**IV.    The Hearing Officer erred when she awarded compensatory education, in the form of tutoring and computer software, when the Parent failed to meet the *Reid* standard.**

Compensatory education is an appropriate remedy for certain violations of the IDEA. "Under the theory of 'compensatory education,' courts and hearing officers may award 'educational services . . . to be provided prospectively to compensate for a past deficient program.'" *Reid v. District of Columbia,* 401 F.3d 516, 522 (D.C. Cir. 2005) (citing *G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003)).  Compensatory education, however, is an equitable remedy, not one of contractual obligation.  *See Id.* at 523.

Pursuant to *Reid*, "[i]n every case . . . the inquiry must be fact-specific and, to accomplish IDEA's purposes, the ultimate award must be reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should

have supplied in the first place." 401 F.3d at 524. Thus, an award of compensatory education must be made on a case by case basis examining where the student should be but for the violation of the school, and fashioning a specific remedy which will bring the student to that level. The District of Columbia Circuit specifically rejected an award of compensatory education based on a day-for-day formula. "In keeping with that principle of case-specific flexibility, we agree with the Ninth Circuit that 'there is no obligation to provide a day-for-day compensation for time missed. Appropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA.'" *Id.* at 524 (citing *Parents of Student W*., 31 F.3d at 1497)(emphasis added).

In the instant case, the award of compensatory education is completely unsupported by the record. Thus, the hearing officer erred in awarding the tutoring and computer software as compensatory education. First, as discussed in depth above, the Hearing Officer specifically found that there was no evidence to show that SAIL did not fully implement the 2005 and 2006 IEPs. AR at 8. Thus, the compensatory education analysis should end right there. Compensatory education is to provide prospective relief for past deficient programs, that is make up for missed services. Since there was no evidence on the record, and no finding in the HOD that SAIL's program was not implemented for D.H., there cannot be a determination that D.H. needs to be compensated.

Even if, *in arguendo,* there was a finding that SAIL did not implement the IEP and provide the services, D.H. is not entitled to compensatory education. The record clearly reflects that the student was making progress. D.H. made progress in O.T., in speech and language therapy, in language arts, and his strengths in math were improving. AR at 688-690. Specifically, D.H. improved in the areas of decoding, overall comprehension, handwriting,

12

sensorimotor foundations, and language arts.  Tr. at 280-82; AR at 657, 661.  Additionally, the

psychological evaluation stated that his scores were likely an **underestimate** of his actual skills

"given that he was tired and would 'rush'."  AR at 678.  Based on these scores, and the progress

made, the hearing officer erred in awarding compensatory education because the parent failed to

meet the standard set forth in *Reid*.

**V.       The Hearing Officer abused her discretion and erred in allowing the parent to
           submit her compensatory education plan after the hearing had concluded.**

As laid out above, the standard for compensatory education is found in *Reid.*  Pursuant to

*Reid,* the parent must  present a compensatory education plan which shows educational

detriment, and what type of program is "reasonably calculated to provide the educational benefits

that likely would have accrued."  401 F.3d at 524; *See also* Tr. at 133.  During the hearing, it was

evident that the parent was not going to meet her burden to prove compensatory education under

the *Reid* standard.  Tr. at 391-393, 401.

At the hearing, the hearing officer inquired to parent's counsel how she was going to meet

the *Reid* standard: "I think the remaining issue is the comp ed discussion, the comp ed count.  Do

you have any witnesses for me with respect to substantiating the mode and quantity of comp ed?"

The response from parent's counsel: "No. . . . I was going to argue Dr. James' testimony about

what harm he has suffered . . . and . . . leave the form and amount to you to determine."  Tr. at

391.  The hearing officer then goes on to state that she needs some evidence or testimony to

make a ruling on the compensatory education issue.  Tr. at 392.  Parent's counsel, however,

maintains her position that she is leaving the decision to the hearing officer.  Parent's counsel

states, "If you don't think you have enough evidence, then you can deny the comp ed plan."  Tr.

at 393.  The hearing officer then allows the parent to leave the hearing and create a compensatory

education plan to submit into evidence **after** the hearing.  Tr. at 393-394.

At the start of the hearing, the Hearing Officer barred SAIL from putting on any evidence because the five day disclosure was filed one day late.  The Hearing Officer, however, abused her discretion when she permitted the parent to file a compensatory education plan **after** the hearing had concluded.  The Hearing Officer and the parent cannot have it both ways: either all evidence not disclosed five days prior to the hearing will be barred, or if the hearing officer was going to be lenient on the disclosure rules and allow the parent to submit documents outside the five day disclosure rule, then the hearing officer should have given that same leniency to SAIL.  Such preferential treatment and bias in favor of the parent is yet another prejudicial hurdle for SAIL during this hearing.

Furthermore, the compensatory education plan ("plan") submitted by the parent is contrary to the facts in the record, and thus the hearing officer erred in giving it any weight at all. The plan states that the student is of average intelligence, and thus his low academic scores are proof that compensatory education is needed.  AR at 744.  However, the evaluations in the record state that the student's intelligence is in the borderline range.  AR at 678.  The plan states that the IEPs were not fulfilled (AR at 744), yet the hearing officer found no evidence to substantiate such assertion (AR at 8).  Additionally, the plan states that extended school year ("ESY") services were not considered by the IEP team or included in the IEP.  AR at 746.  Again, this is contrary to the evidence in the record.  The parent herself submitted as evidence the ESY plan created by the IEP team at SAIL.  AR at 691-92.  As for the computer software, there is no where in the record, other than in the plan, that this type of programming is recommended, requested, or even discussed by the parent with SAIL.  AR at 746.

Thus, the hearing officer erred in allowing the parent to submit evidence after the five day rule and after the hearing.  If the hearing officer was going to be lenient on the five day rule for the parent, such leniency should have been granted to SAIL as well.  Furthermore, if the hearing officer was going to consider the plan, she erred in affording it the weight and credibility that she did due to the factual inaccuracies and contradictions to the record contained in the plan.

## **CONCLUSION**

Based on the arguments above the Plaintiff requests that this Court issue a Summary Judgment for the Plaintiff and against the Defendant and reverse the September 19, 2006 Hearing Officer's Decision.

Date: August 24, 2007                    Respectfully submitted,
                                                        /s/
                                               Paul S. Dalton, Esq
                                               D.C. Bar No. 439118
                                               Dalton & Dalton, P.C.
                                               1008 Pendleton Street
                                               Alexandria, Virginia 22314
                                               (703) 739-4300 (ph)
                                               (703) 739-2323 (fax)

15

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 24th day of August, 2007.


_____/s/_____
Paul S. Dalton, Esq.
Counsel for Plaintiff

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| THE SCHOOL FOR ARTS | : | |
| IN LEARNING ("SAIL") | : | |
| PUBLIC CHARTER SCHOOL | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | **Civil Action No. 06-1821 (TFH)** |
| | : | |
| MICHELLE HAWKINS, et al. | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Pursuant to Fed .R. Civ. P. Rule 56 and LCvR 7 (h), the Plaintiff hereby submits the following

Statement of Material Facts to which there is no genuine issue:

1. D.H.  is a fourteen year-old, special education student who attended SAIL as a seventh grader until May of 2006. AR at 6.

2. The student began his attendance at SAIL in April of his first grade year. AR at 6.

3. SAIL is a District of Columbia Public Charter School which has elected to be its own local education agency ("LEA") under IDEA, for special education issues. Tr. at 396.

4. DCPS is the state education agency ("SEA") which is responsible for overseeing all District of Columbia LEAs, and is responsible to step in and provide services for students when the LEA is unable to do so.  AR at 725, 729, 730.

5. SAIL, as its own LEA, can only place students within its jurisdiction.  Only DCPS, as the state educational agency ("SEA"), can place students in an alternative LEA.  Tr. at 61.

6.      D.H. had an individualized educational program / plan ("IEP") and had been receiving

        special education services since approximately the second grade.  Tr. at 266.

7.      In February and March, 2005, SAIL conducted a occupational therapy ("OT") evaluation.

        AR at 655-676.

8.      On March 21, 2005, an IEP was developed for D.H. at SAIL providing 32 hours of

        specialized instruction and related services.  The parent signed the IEP indicating her

        agreement with the contents. AR at 702.

9.      On March 29, 2005, a psychological evaluation was conducted.  AR at 677-681.

10.     On June 20, 2005, SAIL conducted a speech and language evaluation.  AR at 651-654.

11.     On March 15, 2006, an IEP was developed for D.H. at SAIL providing 32 hours of

        specialized instruction and related services.  The parent signed the IEP indicating her

        agreement with the contents.  AR at 686.

12.     At the March 15, 2006 IEP meeting, SAIL provided the parent with a copy of her

        procedural safeguards.  AR at 687, 688, 701.

13.     On March 27, 2006, a neuropsychological evaluation was conducted.  AR at 636-650.

14.     While attending SAIL, the student was receiving specialized instruction, speech language

        therapy, and occupational therapy.  AR at 687-690.

15.     While at SAIL, D.H. made progress in O.T., in speech and language therapy, in language

        arts, and his strengths in math were improving.  AR at 688-690.  Specifically, D.H.

        improved in the areas of decoding, overall comprehension, handwriting, sensorimotor

        foundations, and language arts.  Tr. at 280-82; AR at 657, 661.

16.     On June 26, 2006, the parent filed a due process complaint alleging, *inter alia*, that SAIL

failed to develop and appropriate IEP, issue an appropriate notice of placement, deliver appropriate services, evaluate the student, provide appropriate specialized instruction and related services, and provide an appropriate placement.  AR at 20-25.

17.     On July 6, 2006, SAIL filed a Motion to Dismiss, or in the alternative, Join DCPS as a Party since placement was a main issue in the case.  AR at 29-30.

18.     On July 7, 2006, DCPS filed a Motion to Dismiss. AR at 32-35.

19.     The parent filed an Opposition to SAIL's Motion and DCPS's Motion on July 13, 2007. AR at 37-45.

20.     The case had not yet been assigned to a Hearing Officer, and thus Chief Hearing Officer David Smith ruled on the Motions.  The Hearing Officer denied SAIL's Motion and granted DCPS's Motion.  AR at 46.

21.     On July 14, 2006, SAIL convened a Resolution Meeting.  Representatives from SAIL, DCPS and the parent and her attorneys participated in the meeting.  AR at 74, 86, 87.

22.     At the Resolution Meeting, the parties discussed that the parent was requesting a private school placement for the 2006-2007 school year.  Dr. Peggy Peagler of DCPS stated that she did not have enough information on D.H. to determine placement at that time.  SAIL agreed to forward all relevant placement information to DCPS and the parent agreed to forward acceptance letters from private schools to DCPS. AR at 74, 86, 87.

23.     The parties agreed to reconvene a placement meeting to discuss and determine placement for the 2006-2007 school year.  The parties scheduled the placement meeting for August 8, 2006.  AR at 54, 74, 86, 87.

24.     On July 31, 2006, the SHO issued a Hearing Notice scheduling the due process hearing

3

for August 30, 2006.  AR at 47- 48.

25.   Counsel for SAIL inadvertently noted on his calendar that the hearing was scheduled for

August 31, 2006, rather than August 30, 2006.  Tr. at 11-12.

26.   After the resolution meeting,  parent's counsel wrote a letter to DCPS seeking funding for

a placement for D.H.  AR at 633.

27.   On August 1, 2006, SAIL renewed its Motion to Join DCPS as a necessary party based on

the new facts coming out of the July 14, 2006 meeting and that DCPS had assumed

responsibility for and jurisdiction over the placement of the student.  AR at 49-51.

28.   The parent filed a response to SAIL's Motion on August 4, 2006 arguing that once DCPS

assumes responsibility for the student, they would be a necessary party.  AR at 55.

29.   Counsel for the parent submitted her five day disclosure on August 23, 2006.  AR at 600.

30.   Due to the inadvertent error in noting the wrong hearing date on the calendar,  Counsel

for SAIL submitted his five day disclosure on August 24, 2006.  AR at 81.

31.   On August 30, 2006,  a due process hearing was held in front of Hearing Officer Tonya

Butler-Truesdale.  Tr. at 1 - 411.

32.   The parent made an objection to SAIL's disclosures because the parent received the

documents one day late, outside the five day disclosure rule.   Tr. at 10-15.

33.   SAIL argued that the documents were already in the parent's possession and thus would

not prejudice the student if admitted into the record.   AR at 4, Tr. at 10-15.

34.   The hearing officer sustained the parent's objection and excluded SAIL's disclosures

from the record.  Tr. at 10-15.

35.   At the hearing, SAIL renewed its Motion to Join DCPS as a Necessary Party because

4

DCPS had participated in a placement meeting prior to the hearing and proposed Prospect Learning Center as a placement for the 2006-2007 school year.  Tr. at 15 - 120.

36. During the arguments of this Motion, counsel for DCPS admitted that DCPS becomes a necessary party when the LEA appeals to DCPS as the SEA because it can no longer service the student.  Tr. at 30-31.

37. Counsel for DCPS also stated that LEA charter schools "do not have an independent right to issue a placement for a student."  Tr. at 61.

38. The Hearing Officer denied the Motion and dismissed DCPS from the hearing room.  AR at 5; Tr. at 15 - 120, specifically 119-120.

39. Throughout the hearing, counsel for SAIL was prevented from introducing evidence, including evidence of the August 8, 2006 meeting, and being able to present a defense to the allegations.  Tr. at 1- 411.

40. At the hearing, the parent did not produce any evidence regarding a compensatory education plan.  Tr. at 1- 411, specifically 391-395.

41. On September 1, 2006, counsel for SAIL submitted a Praecipe regarding the LEA's inability to and the SEA's responsibility to place students outside of the LEA's jurisdiction.  AR at 725-738.

42. The parent filed an objection to SAIL's praecipe on September 6, 2006. AR at 739.

43. Over the parent's objection, the Hearing Officer considered the praecipe as a matter of equity.  AR at 5.

44. On September 6, 2007, the parent submitted a compensatory education plan, which was not submitted in the parent's five day disclosure.  AR at 742.

45. On September 19, 2006, the hearing officer issued her determination. The hearing officer found that SAIL denied the student a free appropriate public education (FAPE) by failing to ensure he made academic progress, failing to ensure the issuance of an appropriate notice of placement, or initiate SEA participation when it was determined that SAIL was not an appropriate placement. However, the hearing officer also concluded that parent failed to prove that SAIL had not provided for and delivered appropriate instructional and related services pursuant to the IEP. AR at 2-12.

46. The hearing officer ordered SAIL to fund the student at The Katherine Thomas School including transportation for the 2006-2007 school year. SAIL was also ordered to convene an IEP meeting at Katherine Thomas to review and revise the IEP, fund forty-six hours of after school tutoring for reading, fund twenty-three hours of after school tutoring in study skills and organization, and fund Kurzwell and Inspiration software. AR at 11-12.

Date: August 24, 2007

Respectfully submitted,

_____/s/_____
Paul S. Dalton, Esq
D.C. Bar No. 439118
Dalton & Dalton, P.C.
1008 Pendleton Street
Alexandria, Virginia 22314
(703) 739-4300 (ph)
(703) 739-2323 (fax)

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THE SCHOOL FOR ARTS                            :
IN LEARNING ("SAIL")                           :
PUBLIC CHARTER SCHOOL                           :
                                               :
      Plaintiff                          :
                                               :
      v.                                 :    **Civil Action No. 06-1821 (TFH)**
                                               :
MICHELLE HAWKINS, et al.                        :
                                               :
      Defendants.                        :
_____                :

**ORDER**

      Upon consideration of the Plaintiff's Motion for Summary Judgment, and any opposition

thereto, it is hereby

      ORDERED: that Plaintiff's Motion for Summary Judgment is GRANTED;

      FURTHER ORDERED:  The September 19, 2006 Hearing Officer's Determination is

reversed.

_____          _____
Date                    Chief Judge Thomas F. Hogan
                           United States District Judge