## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE SCHOOL FOR ARTS** | ) | |
| **IN LEARNING ("SAIL")** | ) | |
| **PUBLIC CHARTER SCHOOL,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1821 (TFH)** |
| | ) | |
| **MICHELLE HAWKINS, et al.,** | ) | |
| | ) | |
| Defendants | ) | |

### DEFENDANTS MICHELLE HAWKINS AND D.H.'S
### MOTION FOR SUMMARY JUDGMENT, AND OPPOSITION
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Defendants Michelle Hawkins and D.H., by counsel and pursuant to Fed. R. Civ P. 56, hereby move this court to enter summary judgment in favor of these Defendants, finding that the Hearing Officer's Decision ("HOD") issued by Hearing Officer Butler-Truesdale on September 19, 2006, was not issued in error and did not contain erroneous conclusions of law or findings of fact. In addition, Defendants Michelle Hawkins and D.H. respectfully request that this Court deny Plaintiff's Motion for Summary Judgment.

The reasons for the motion, and for Defendants' opposition to Plaintiff's Motion, are set forth in the accompanying memorandum of points and authorities, as well as the Statement of Material Facts as to Which There Is No Genuine Issue. A proposed order is also submitted herewith.

Respectfully Submitted,
/s/ Donna Wulkan
Donna L. Wulkan
D.C. Bar No. 370961
1765 N Street, N.W.
Washington, DC 20036

1

202-682-3909
202-955-1015 (facsimile)
Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THE SCHOOL FOR ARTS** | ) | |
| **IN LEARNING ("SAIL")** | ) | |
| **PUBLIC CHARTER SCHOOL,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | **Civil Action No. 06-1821 (TFH)** |
| | ) | |
| **MICHELLE HAWKINS, et al.,** | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS**
**MICHELLE HAWKINS AND D.H.'S MOTION FOR SUMMARY JUDGMENT, AND**
**OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case is brought by the School for Arts in Learning ("SAIL") Public Charter School pursuant to the Individuals with Disabilities Education ACT ("IDEA"), 20 U.S.C. § 1400, *et. seq.* and the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. § 1415 ("IDEIA").

**STATEMENT OF THE CASE**

Plaintiff The School for Arts In Learning Public Charter School ("SAIL") is a District of Columbia Public Charter School.  See AR at 727.  For purposes of implementing the Individuals with Disabilities Education Act ("IDEA"), SAIL has opted to serve as its own local education agency ("LEA").  As state education agency ("SEA"), Defendant District of Columbia Public Schools ("DCPS") retains overall responsibility for ensuring that LEAs within the District of Columbia comply with all requirements of the IDEA.  Defendant D.H. is a fifteen-year-old child.

 See AR at 116:16-17; see also AR at 636 (recording D.H.'s birthday).  Defendant Michelle

Hawkins ("Parent") is the mother of D.H.  See AR at 24.  D.H. began attending SAIL in April of

his first grade year.  See AR at 6; see also AR at 234: 19.  D.H. attended SAIL for seven years,

including two years of sixth grade.  See AR at 6.  D.H. attended SAIL through the end of seventh

grade in June 2006.  See AR at 235: 4-5.

 D.H. had an Individualized Educational Plan ("IEP") at SAIL during the 2005-2006

school year.  See AR at 702.  D.H.'s IEP for the 2005-2006 school year provided for full-time

special education - 32 hours per week, or 6 hours and 24 minutes per day.  See AR at 702.  Prior

to creation of that IEP, Michael Smith, a SAIL therapist, and Linda Nolan, a SAIL consulting

therapist, carried out an occupational therapy ("OT") evaluation for D.H.  See AR at 655-676.

Smith and Nolan's report of their evaluation recommended that D.H. continue to receive 1 hour

per week of OT services.  See AR at 675.  On June 20, 2005, SAIL speech-language pathologist

Katy Rizvi ("Rizvi") conducted a speech-language evaluation of D.H.  See AR at 651-655.  In

her report on the evaluation, Rizvi diagnosed a severe speech and language impairment in both

receptive and expressive language, and a severe impairment in language processing and

language memory.  See AR at 653.  She recommended that D.H. continue to receive 1 hour per

week of speech-language services.  See AR at 654.

 On March 29, 2005, Erik Scott, a pediatric psychologist at Mt. Washington Pediatric

Hospital in Cheverly, Maryland, conducted a psychological evaluation of D.H.  See AR at 677-

681.  That psychological evaluation was conducted at the request and expense of the Parent.  See

AR at 677.  In his report, Dr. Scott noted that D.H. – who had just completed sixth grade for the

second time – functioned at a "second/third grade level" in written language expression; and

2

noted that D.H. had "borderline/low average cognitive skills." <u>See</u> AR at 680. Dr. Scott

recommended that D.H. receive specific services to address deficits in his reading and writing

skills, and that he receive services from an "organization coach." <u>See</u> AR at 681.

On March 27, 2006, Dr. Joette James and Dr. Lauren Krivitzky, licensed psychologists at

Children's National Medical Center, performed a neuropsychological evaluation of D.H. <u>See</u>

AR at 636-650. That neuropsychological evaluation was conducted at the request and expense

of the Parent. <u>See</u> AR at 636. James and Krivitzky's report diagnosed D.H. with Attention

Deficit Hyperactivity Disorder, Predominantly Inattentive Type; a Reading Disorder

(synonymous with Dyslexia); a Mathematics Disorder; and a Disorder of Written Expression.

<u>See</u> AR at 641. They noted that "[t]here are ongoing concerns about [D.H.]'s attention and

focus" and that D.H. "has a hard time . . . resisting distractions and staying on task." <u>See</u> AR at

637. Drs. James and Krivitzky recommended that D.H. receive placement in a highly-structured

special education classroom with a low student-to-teacher ratio; individualized, systematic, daily

reading instruction and services utilizing specific strategies to improve reading comprehension;

and specific services in math instruction tailored to D.H.'s particular strengths. <u>See</u> AR at 642-

43. They also recommended that D.H. be provided with a personal word processor. <u>See</u> AR at

643.

On March 21, 2006, SAIL staff members met with Parent and developed an IEP for D.H.

to cover the 2006-2007 school year. <u>See</u> AR at 686-701. The IEP developed at SAIL for the

2006-2007 school year provided for full-time special education instruction. <u>See</u> AR at 686, 690.

Rizvi noted at the meeting that "attention still seems to be an issue." <u>See</u> AR at 688. Parent

also expressed concerns about "the open space in the building" in which SAIL's middle school

program was located, which Parent felt added to distractions from D.H.'s classes and special education services. See AR at 690. SAIL staff members planned to meet again with Parent to review and revise D.H.'s IEP in March 2007. See AR at 698.

On June 23, 2006, Parent filed a due process complaint against SAIL. AR at 20-25. In the due process complaint against SAIL, Parent argued that D.H.'s "current middle school program at SAIL is inappropriate," that D.H. "is not making adequate academic progress" and that his "classes are too large and unstructured" and until recently had been in an "open space" setting. See AR at 24. Parent alleged that SAIL had failed to develop an appropriate IEP; that SAIL had failed to provide for and deliver appropriate instructional and related services; that SAIL had failed to evaluate D.H. in all areas of his disability; and that SAIL had failed to ensure that D.H. made adequate progress in his academic programs. See AR at 25.

On July 6, 2006, SAIL filed a Motion to Dismiss or in the Alternative Motion to Join a Necessary Party. See AR at 29-31. In its Motion, SAIL requested that the DCPS Student Hearing Office dismiss the complaint against SAIL or join DCPS as a necessary party to the complaint. See AR at 29-30. SAIL alleged, without legal citation, that "SAIL, as its own LEA, can only place students within its own program." See AR at 30. SAIL did not allege in its Motion that, as its own LEA, it had attempted to notify DCPS that SAIL was unable to deliver services to D.H. prior to parent's complaint. See AR at 29-30.

On July 7, 2006, DCPS filed a Motion to Dismiss SAIL's Motion to Join a Necessary Party. See AR at 32-36. DCPS argued that the Student Hearing Office should dismiss SAIL's Motion to Join a Necessary Party because DCPS was not named in the complaint. See AR at 32. Additionally, DCPS argued that SAIL, as its own LEA, had never notified DCPS that SAIL

4

would be unable to provide special education services to D.H., pursuant to DCMR § 5-3019.9. See AR at 33. On July 13, 2006, Parent filed an Opposition to Motions to Dismiss Submitted by SAIL and DCPS and Response to SAIL's Motion to Join a Necessary Party. See AR at 37-45. Parent argued that DCPS was not a necessary party to the due process complaint, because the denials of FAPE in the complaint were directed only against SAIL and based on actions by SAIL officials. See AR at 39. Parent argued that, pursuant to DCMR § 5-3019.13, SAIL was capable of paying for an HOD-ordered private school placement for D.H. because LEA Charter Schools are "responsible for implementation of all agreements or decisions resulting from . . . due process hearings." See AR at 41.

On July 13, 2006 – the same day that Parent's Motion was filed – Chief Hearing Officer David Smith denied SAIL's Motion to Dismiss or in the Alternative to Join; and granted DCPS's Motion to Dismiss. See AR at 46. Hearing Officer Smith reasoned that the "allegations in the Complaint concerning a denial of FAPE are against SAIL"; and that "the Complaint does not state facts alleging that DCPS has denied the student FAPE." See AR at 46. Additionally, Hearing Officer Smith determined that "SAIL, as its own LEA, may be able to provide the relief requested should it be determined that there was a denial of FAPE." AR at 46.

The deadline for the resolution meeting in this matter was July 11, 2006. See AR at 27. SAIL convened a resolution meeting on July 14, 2006 (the day after Hearing Officer Smith denied SAIL's motion to join DCPS as a party). See AR at 74. Participants at the meeting included parent, parent's attorney, the principal of SAIL, SAIL's special education coordinator, attorney for SAIL and an employee of DCPS ("DCPS employee") participating by telephone. See AR at 74. The participation of DCPS employee was procured unilaterally by SAIL, without

5

notice to parent.  <u>See</u> AR at 8; <u>see also</u> AR at 150:8-9.  SAIL unilaterally invited the DCPS

employee on the morning of the meeting.  <u>See</u> AR at 74.  At the meeting, SAIL acknowledged

that it was not an appropriate placement for D.H.  <u>See</u> AR at 8; <u>see also</u> AR at 74.  At the end of

the resolution meeting, the complaint was not resolved.  <u>See</u> AR at 74.

     Following the unsuccessful conclusion of the resolution meeting, an MDT meeting was

scheduled for August 8, 2006, to discuss D.H.'s placement for the 2006-2007 school year.  <u>See</u>

AR at 74.  The DCPS employee at the resolution meeting agreed to participate in the August 8,

2006, MDT meeting.  <u>See</u> AR at 74.

     On July 31, 2006, the Student Hearing Office issued a Hearing Notice to SAIL and

Parent scheduling the Due Process Hearing for August 30, 2006.  <u>See</u> AR at 47-48.  On August

1, 2006, SAIL filed a second Motion to Join a Necessary Party, asking the Student Hearing

Office to join DCPS as a party to the due process complaint.  <u>See</u> AR at 49-52.  In its second

Motion to Join a Necessary Party, SAIL argued that the DCPS employee's participation in the

resolution meeting convened on July 14, 2006, was relevant to the resolution of parent's

complaint, and urged the hearing office not to schedule a hearing until after the August 8 MDT

meeting.  <u>See</u> AR at 49-50.  SAIL alleged that the only issue to be resolved in the Due Process

Hearing was a question of D.H.'s placement for the 2006-2007 school year.  <u>See</u> AR at 49

(arguing that DCPS approval of a private placement for D.H. would render "a hearing . . .

unnecessary").

     On August 4, 2006, parent submitted a Response to SAIL's Motion to Join a Necessary

Party, including five evidentiary exhibits.  <u>See</u> AR at 53-74.  Parent cited the July 13 denial of

SAIL's first Motion to Join, and noted that the denial found that DCPS had "not assumed

<div align="center">6</div>

responsibility for D.H." prior to the filing of the complaint, and that therefore DCPS was not a necessary party to the action.  See AR at 55.  Parent argued that DCPS would only be a necessary party to resolution of the complaint if DCPS had "assumed responsibility for the education of [D.H.]" prior to the filing of the complaint.  See AR at 55.  In addition, Parent noted that the relief requested in the complaint included compensatory education and so private placement would not render a hearing unnecessary.  See AR at 56.  No hearing officer ruled on SAIL's second Motion to Join a Necessary Party, or Parent's Opposition, prior to the Due Process Hearing.  AR at 138:10-12.

On August 23, 2006, parent timely submitted her five-day disclosure to counsel for SAIL and to the Student Hearing Office via messenger.  See AR at 600-724.  On August 23, 2006, parent submitted a supplemental five-day disclosure to counsel for SAIL and the Student Hearing Office via facsimile.  See AR at 75-80.  On August 24, 2006, SAIL submitted an untimely five-day disclosure to counsel for parent, via facsimile.  See AR at 81-88.  SAIL's five-day disclosure provided a list of four witnesses that SAIL intended to call, and two documents. See AR at 81.  Neither SAIL nor parent submitted a five-day disclosure to counsel for DCPS. See AR at 141: 8-10.

On August 30, 2006, a Due Process Hearing was convened by Hearing Officer Tonya Butler-Truesdale.  See AR at 114-524.  At the outset of the hearing, Parent objected to admission of SAIL's five-day disclosure at the Hearing because the disclosure was submitted late.  See AR at 123: 21-124: 2.  SAIL argued that the five-day disclosure was late because counsel for SAIL had misscheduled the hearing on its calendar.  See AR at 124: 18-20.  SAIL argued that admission of the five-day would be non-prejudicial to Parent.  See AR at 125: 1.  Hearing

Officer Butler-Truesdale sustained parent's objection and excluded SAIL's five-day disclosure. <u>See</u> AR at 126: 21-127: 4.

SAIL then orally renewed its second Motion to Join a Necessary Party, asking Hearing Officer Butler-Truesdale to join DCPS as a party to the complaint. AR at 132: 14-16; AR at 138: 15-144: 14. Counsel for SAIL argued that the occurrence of an August 8, 2006, MDT meeting concerning placement for D.H. for the 2006-2007 school year mooted the contents of Parent's complaint. <u>See</u> AR at 139: 11-140: 14. Counsel for SAIL repeatedly argued that the events of the August 8, 2006, MDT meeting necessitated a dismissal of the complaint against SAIL and joinder of DCPS as a defendant. <u>See</u> AR at 140: 2-7, 161: 8-162: 5, 183: 15-22. Counsel for DCPS was present at the beginning of the hearing, and opposed SAIL's motion at the hearing to join DCPS as a necessary party. <u>See</u> AR at 141: 7-146: 13. Counsel for DCPS opposed being joined as a party because D.H. did not attend a school for which DCPS was the LEA. <u>See</u> AR at 143: 14-15. In addition, Counsel for DCPS opposed being joined as a party because, during D.H.'s enrollment at SAIL, SAIL had never notified SEA DCPS that SAIL was unable to serve the D.H. <u>See</u> AR at 143: 21-144: 3, 146: 10-13. Counsel for parent opposed SAIL's motion at the hearing to join DCPS as a necessary party. <u>See</u> AR at 147: 1-156: 9. In opposing SAIL's motion, counsel for parent agreed with DCPS's arguments, and also argued that there was no attempt by SAIL to introduce evidence regarding the August 8, 2006 MDT meeting concerning placement. <u>See</u> AR at 190: 1-18.

Hearing Officer Butler-Truesdale ruled on SAIL's Motion after hearing "almost two hours" of legal argument from SAIL, parent and DCPS. <u>See</u> AR at 230: 22-231: 1. The Hearing Offier denied SAIL's Motion to Join a Necessary Party and dismissed counsel for DCPS from

the hearing.  See AR at 5; AR at 118: 6-120: 2.  Hearing Officer Butler-Truesdale determined

that she was bound to issue a decision within the parameters of parent's complaint.  See AR at

231: 19-232: 1.  The Hearing Officer found that no intervening event required dismissal of the

case against SAIL.  See AR at 232: 2-6.  Further, the Hearing Officer noted that she "was not

certain how . . . relevant" were the "intervening issues [that] occurred after the complaint was

filed."  See AR at 232: 10-13.

　　　　Following the Hearing Officer's ruling on SAIL's motion, counsel for parent made her

opening argument.  See AR at 234: 9-243: 11.  In particular, counsel for parent argued that she

would show that SAIL and the parent had agreed to provide D.H. with a full-time IEP, but SAIL

then failed to ensure D.H. made adequate academic progress.  See AR at 236: 11-23, 238: 16-18.

 Counsel for parent also argued that she would show SAIL was an inappropriate educational

placement for D.H.  See AR at 239: 1-7.  Counsel for SAIL argued that the Hearing Officer

could not award relief to the parent against SAIL.  See AR at 245: 1-246: 22.  Counsel for SAIL

noted that he would not "debate all this" because he intended to appeal any HOD in federal

district court.  See AR at 246: 11-14.

　　　　Parent presented three witnesses, including Dr. Joette James ("Dr. James"); Deborah

Lourie; and parent.  See AR at 276: 9-346: 17; AR at 355: 4-373: 15; AR at 374: 1-477: 6.  Dr.

James testified that D.H., as a rising eighth grader, displayed academic skills appropriate to

second or fourth grade levels.  AR at 335: 11-13.  Dr. James testified that D.H. was not making

academic progress commensurate with implementation of a full-time IEP.  AR at 333: 3-6.

Counsel for SAIL was unable to cross-examine Dr. James immediately following direct. See AR

at 344: 13-15.  Hearing Officer Butler-Truesdale offered to allow counsel for SAIL to review

tape of direct, and to cross examine Dr. James two hours later on the same day.  See AR at 349:

6-13.  Counsel for SAIL waived the opportunity to cross-examine Deborah Lourie.  AR at 373:

2-5.

Following direct examination of parent, counsel for SAIL cross-examined parent.  See

AR at 416: 15-474: 17.  Counsel for SAIL attempted to question parent regarding the August 8,

2006 MDT meeting regarding placement.  See AR at 462: 1-6, 472: 5-8.  Counsel for parent

objected to the line of questions.  See AR at 462: 7-11.  Counsel for parent noted that "[e]ven in

your not-allowed disclosures, there is no disclosure . . . about anything . . . that happened

subsequent to the resolution meeting." See AR at 471: 1-5.  Hearing Officer Butler-Truesdale

sustained parent's objection.  See AR at 463: 2-5.

Counsel for SAIL then called SAIL employee Jenna Umansky as a witness to rebut

parent's allegations.  AR at 482: 6-504: 5.  Counsel for SAIL indicated to the Hearing Officer his

intent to ask Ms. Umansky a series of questions regarding the August 8, 2006 MDT placement

meeting.  See AR at 486: 20-487: 4.  Counsel for parent objected.  See AR at 487: 5.  The

Hearing Officer sustained the objection.  See AR at 491: 10.  Counsel for parent cross-examined

Ms. Umansky.  See AR at 496: 2-503: 5.

Following direct examination of Ms. Umansky, counsel for SAIL waived his opportunity

to cross-examine Dr. James.  See AR at 492: 9-10.  Counsel for SAIL also waived the

opportunity to make a closing argument.  See AR at 492: 10-11.  However, counsel for SAIL

requested that the record be left open for additional documents.  See AR at 493: 8-9.

Specifically, counsel for SAIL requested leave to submit D.H.'s IEPs for the 2001-2002, 2002-

2003, and 2003-2004 school years.  See AR at 494: 12-16.  At the same time, Hearing Officer

Butler-Truesdale noted that she would permit parent to submit a compensatory education plan

because she had agreed to "leave the record open for him." <u>See</u> AR at 505: 5.  SAIL did not

object to the Hearing Officer's decision to leave the record open.

Counsel for SAIL left the Hearing before its conclusion.  <u>See</u> AR at 5; <u>see also</u> AR at

508: 11-12.

Following counsel for SAIL's departure, counsel for parent made her closing argument.

<u>See</u> AR at 508: 21-510: 17.  Counsel for parent also presented the Hearing Officer with six

opinions from the U.S. District Court for the District of Columbia, previously discussed in the

hearing, holding that DCPS was not a necessary party to a due process complaint alleging only

actions or failures to act by charter schools; a list of citations to D.C. Municipal Regulations and

U.S. Code covering LEA Charter Schools; and a matrix summarizing those cases.  <u>See</u> AR at

510: 20-512: 18.  The Hearing Officer requested that counsel for parent forward the same

information to counsel for SAIL.  <u>See</u> AR at 512: 20-22.  The Hearing Officer noted that

"unfortunately, respondent chose to leave," and was not present to discuss parent's submitted

case law and statutes.  <u>See</u> AR at 513: 10-12.  The Hearing Officer reiterated that the record

would remain open for one week to allow SAIL's proposed submission of IEPs and parent's

proposed submission of a compensatory education plan.  <u>See</u> AR at 513: 18-516: 5.

On September 1, 2006, SAIL submitted a Praecipe to the Hearing Officer, submitting

"additional records for consideration by the Hearing Officer."  <u>See</u> AR at 725-738.  SAIL's

Praecipe did not include any of the IEPs that counsel indicated would be submitted.  The

Praecipe did contain an *amicus curiae* brief that counsel for SAIL had submitted in the

<u>Blackman-Jones</u> class action.  <u>See</u> AR at 727-737.  The Praecipe also contained a one-page,

11

partial list of DCMR regulations concerning LEA Charter Schools.  <u>See</u> AR at 737.  The Hearing

Officer did not receive SAIL's Praecipe and attached submissions until September 18, 2006.  <u>See</u>

AR at 6.

On September 6, 2006, parent submitted an opposition to the SAIL's Praecipe.  AR at

739-741.  Parent argued that "when counsel for SAIL announced that he was waiving his right to

conduct a closing argument and walked out of the hearing room," he effectively waived any right

to present additional arguments or exhibits.  <u>See</u> AR at 739.

Parent submitted a compensatory education plan under separate cover on September 6,

2006.  <u>See</u> AR at 742-746.  SAIL did not respond to parent's opposition to Praecipe or

submission of the compensatory education plan.  <u>See</u> AR at 12.

On September 19, 2006, the Hearing Officer issued her Decision.  <u>See</u> AR at 2-14.  In

reaching her Decision, Hearing Officer Butler-Truesdale considered both SAIL's Praecipe and

parent's compensatory education plan, submitted post-hearing, as a matter of equity.  <u>See</u> AR at

5.  The HOD concluded that SAIL denied a free appropriate public education to D.H. by failing

to ensure that D.H. made progress in his academic program; by failing to ensure the issuance of

an appropriate notice of placement; and by failing to initiate SEA participation when it was

determined that SAIL was not an appropriate placement.  <u>See</u> AR at 8.  The HOD concluded that

the parent had not proved that SAIL did not provide for and deliver appropriate instructional and

related services pursuant to the IEP.  <u>See</u> AR at 8.  The HOD concluded that SAIL's unilateral

invitation of DCPS to participate in the July 14, 2006, resolution meeting did not make DCPS a

necessary party to the action.  <u>See</u> AR at 8-9.  In addition, the Hearing Officer noted that SAIL

"was unable to identify any binding statutory authority or case law" to support SAIL's argument

that DCPS participation at a "placement meeting" constituted notice to DCPS as SEA that SAIL

was unable to meet D.H.'s educational needs.  See AR at 5.

The HOD ordered SAIL to fund D.H. at the Katherine Thomas School, including

transportation services; ordered SAIL to fund 46 hours of after-school tutoring in reading at

Katherine Thomas School; ordered SAIL to fund 23 hours of after-school tutoring in study skills

and organization at the Katherine Thomas School; ordered SAIL to fund a Kurzweil 3000 Learn

Station software and to fund Inspiration or CoWriter or Write Out Loud software for D.H. within

30 days of his enrollment at Katherine Thomas School; ordered SAIL to reimburse parent for

attorneys' fees and costs; and ordered SAIL to fund extended school year ("ESY") services for

D.H. at Katherine Thomas School, if an MDT/IEP team there determines such services are

necessary.  See AR at 11-12.

The HOD concluded that parent was the prevailing party.  See AR at 11.

On October 23, 2006, SAIL filed the instant appeal of the HOD in U.S. District Court for

the District of Columbia.  See Plaintiff's Complaint at 9.  SAIL did not move this Court to stay

implementation of the HOD, or to issue a preliminary injunction against enforcement of the

HOD.  See Defendant Hawkins's Answer at 8-9.  However, SAIL has not complied with any

order contained in the HOD.  See Answer of Plaintiff SAIL to Defendant Hawkins'

Counterclaims at 3-4.

Pursuant to the HOD, D.H.'s private special education placement submitted repeated

payment requests to SAIL seeking funding for services provided from August to November.  See

Exhibit 1, Letter from Katherine Thomas School to SAIL CEO dated October 17, 2006 ("Ex.

1"); see also Exhibit 2, Letter from Katherine Thomas School to SAIL CEO dated November 16,

2006 ("Ex. 2").  SAIL neither submitted payments to the private placement, nor did SAIL notify

the private placement that it would not comply with the HOD pending the instant appeal.  See

Exhibit 5, Letter from Katherine Thomas School to Counsel for DCPS dated November 16, 2006

("Ex. 5").  As a result, D.H. faced imminent expulsion from his Hearing Officer ordered

placement.  See Ex. 5.  Due to SAIL's unresponsiveness and non-compliance with the HOD,

parent sought funding from DCPS, and DCPS agreed to provide funding for D.H. through the

2006-2007 school year.

## ARGUMENT

I.    **THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND AFFIRM THE HEARING OFFICER'S DETERMINATION**

A.    **Plaintiff's "Statement of Material Facts" Contains Legal Arguments and Immaterial Facts**

It is Defendant Hawkins's position that there are no material facts which are in genuine

dispute in this appeal, and agrees with Plaintiff's characterization that "the issues in this case are

legal in nature."  See Plaintiff's Memorandum at 6.  However, Defendant Hawkins cannot agree

with the Plaintiff's submitted Statement of Material Facts As to Which There is No Genuine

Dispute.  While the material factual statements contained therein are not in dispute, the Plaintiff

has larded its statement with legal arguments and immaterial facts that provoke objection from

this Defendant.

1.    **Plaintiff's "Statement of Material Facts" Contains Legal Arguments**

Plaintiff's legal arguments are interspersed throughout the Statement of Material Facts.

Defendant Hawkins objects to the Plaintiff's Statement of Material Facts to the degree that it

incorporates non-factual legal arguments.  For example, Plaintiff's Statement of Material Facts

states that "SAIL, as its own LEA, can only place students within its jurisdiction." <u>See</u> Plaintiff's Statement of Material Facts as to Which There Is No Genuine Dispute ("Plaintiff's Statement") at ¶5.  Plaintiff does not make a citation to the record for this statement, and it is clearly a legal conclusion.

More colorfully, Plaintiff attempts to introduce as a statement of fact that "Throughout the hearing, counsel for SAIL was prevented from introducing evidence, including evidence of the August 8, 2006 meeting, and being able to present a defense to the allegations." <u>See</u> Plaintiff's Statement at ¶ 39.  As support for this assertion, Plaintiff cites to the entirety of the hearing transcript.  To include such a statement in the "Statement of Material Facts" is inappropriate, because it is not a fact established on the record and is instead legal argument.

Similarly, the Plaintiff asserts that "at the hearing, the parent did not produce any evidence regarding a compensatory education plan." <u>See</u> Plaintiff's Statement at ¶ 40.  Again, as support for this assertion, the Plaintiff cites to the entire transcript, but includes a specific citation to five pages of the transcript.  However, this citation is misleading because on those five pages, the only specific support for the assertion that no evidence supported the compensatory education plan is Plaintiff's counsel's own arguments that "she doesn't meet the [Reid] standard." <u>See</u> AR at 505: 9-10.  Such a statement is Plaintiff's legal argument, not a material fact; and because it is a legal argument, it is not a fact.

Defendant Hawkins will not recite objections to every statement by Plaintiff containing legal argument.  For reference, however, Defendant Hawkins objects specifically to ¶s 5, 27, 28, 29, 30, 33, 35, 36, 37, 39 and 40 because they contain, in whole or in part, legal arguments that are not material facts.

##### 2.     Plaintiff's "Statement of Material Facts" Contains Irrelevant Facts That are Not Material

Plaintiff's statement of material facts includes multiple factual statements that are not relevant to the appealed from Hearing Officer's Determination.  Defendant Hawkins objects to the Plaintiff's Statement of Material Facts to the degree that it incorporates non-material factual statements.  For example, Plaintiff states that "Counsel for SAIL inadvertently noted on his calendar that the hearing was scheduled for August 31, 2006, rather than August 30, 2006."  <u>See</u> Plaintiff's Statement at ¶ 25.  Plaintiff may wish to prove that its untimely five-day disclosure was innocent.  But the Hearing Officer's rulings on Plaintiff's untimely disclosure do not reflect any concern for mistakes by Plaintiff's counsel, innocent or otherwise.  Plaintiff's citation in support of Plaintiff's counsel's mistake cites only to the statements of Plaintiff's counsel.

More significantly, Plaintiff attempts to use the Statement of Material Facts to add new evidence of events at an August 8, 2006 MDT meeting that is not included in the administrative record.  Plaintiff states that "At the hearing, SAIL renewed its Motion to Join DCPS as a Necessary Party because DCPS had participated in a placement meeting prior to the hearing and proposed Prospect Learning Center as a placement for the 2006-2007 school year."  <u>See</u> Plaintiff's Statement at ¶ 35.   Plaintiff supports this statement of "material fact" by referring to its own arguments at the hearing.  The facts regarding events at the August 8, 2006 MDT meeting are otherwise unsupported on the record.  Moreover, the Hearing Officer heard Plaintiff's argument to this effect, and determined that the events of that MDT meeting were inadmissible and irrelevant to the Plaintiff's case.

Defendant Hawkins will not recite objections to every statement by Plaintiff containing irrelevant and non-material facts.  For reference, however, Defendant Hawkins objects

specifically to ¶s 14, 22, 23, 25, and 35 because they contain, in whole or in part, factual

assertions based on irrelevant and non-material facts.

Therefore, Defendant Hawkins respectfully requests that this Court not adopt Plaintiff's

Statement of Material Facts as to Which There Is No Genuine Dispute; and respectfully requests

that this Court find that the Plaintiff's Statement of Material Facts contains statements that are

legal argument, and statements that contain irrelevant facts. Defendant Hawkins also

respectfully requests that this Court find that there is no genuine dispute as to any relevant

factual assertions.

Finally, in support of her Motion, Defendant Hawkins is attaching to this filing her

Statement of Material Facts.

### B. Plaintiff's Motion Fails to Meet Appropriate Standard for Overturning an HOD Under the IDEA

The party seeking summary judgment must demonstrate that there is an absence of a

genuine issue of material fact, and that the only issues remaining before the Court are legal

disputes. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In reviewing an administrative

determination under the IDEA, the district court "(i) shall review the records of the

administrative proceedings, (ii) shall hear additional evidence at the request of a party, and (iii)

basing its decision on the preponderance of the evidence, shall grant such relief as the court

determines is appropriate." 20 U.S.C. § 1415 (i)(2)(c). A court reviewing an HOD under the

IDEA need give less deference to the Hearing Officer's determinations than is conventionally

due in reviewing administrative proceedings. Bd. of Educ. v. Rowley, 458 U.S. 176, 206 (1982).

 Nevertheless, the reviewing court must give "due weight" to the Hearing Officer's

determinations. Id. The party challenging the administrative decision bears the burden of

persuading the Court to set aside the decision.  Kerkam v. McKenzie, 862 F.2d 884, 887

(C.A.D.C. 1988).  The party challenging the decision must meet that burden by a preponderance

of the evidence why the Hearing Officer's determination should be set aside.  Rowley, 458 U.S.

at 206.  Finally, the Court owes particular deference to findings in an HOD based on the Hearing

Officer's judgment of live witness credibility when the challenging party has made no attempt to

supplement the record.  R.D. ex rel. Kareem v. District of Columbia, 374 F.Supp. 2d 84, 89-90

(D.D.C. 2005)(citing Shore Reg'l High Sch. Bd. of Educ. v. P.S., 381 F.3d 194, 199 (3d. Cir.

2004)).  In this instance, the Hearing Officer based many of her findings of fact and conclusions

of law on her judgment of witness credibility.  The Plaintiff must therefore demonstrate that her

credibility judgments, and accompanying findings of fact, were unsupported by more than a

preponderance of the evidence. The Plaintiff fails to demonstrate evidence in the record that

undermines the Hearing Officer's findings and conclusions. Further, the Plaintiff makes

absolutely no attempt to demonstrate some fact overlooked by the Hearing Officer through

affidavits supplementing the administrative record.  The Plaintiff fails to meet the standard

necessary to support a Motion for Summary Judgment.

In this case, the preponderance of the evidence does not support Plaintiff's contention

that the Hearing Officer's determination was in error.  Therefore, as a matter of law, the Court

should deny the Plaintiff's Motion for Summary Judgment and affirm the validity of the HOD.

### 1.    Hearing Officer Did Not Err or Abuse Discretion in Excluding SAIL's Five-Day Disclosure

In its Motion for Summary Judgment, Plaintiff alleges that Hearing Officer abused her

discretion by excluding SAIL's five-day disclosure.  See Plaintiff's Memorandum of Points and

Authorities in Support of its Motion for Summary Judgment ("Plaintiff's Memorandum") at 6-8.

The Hearing Officer's decision to exclude the five-day disclosure was not error.  Under the IDEA, "each party <u>shall</u> disclose" all evidence five days prior to the hearing, and if a party fails to do so, "a hearing officer <u>may</u> bar any party that fails to comply . . . from introducing" the untimely disclosed evidence.  <u>See</u> 20 U.S.C. § 1415(f)(2)(emphasis added).  Therefore, the Hearing Officer's decision to exclude the evidence was not an error.

Plaintiff acknowledges that its five-day disclosure "only contained a few documents." <u>See</u> Plaintiff's Memorandum at 8.  Plaintiff alleges, however, that the Hearing Officer's decision to exclude its five-day disclosure was abuse of discretion because "the witness list was crucial to SAIL's defense."  <u>Id</u>.  Plaintiff fails to demonstrate that the Hearing Officer's decision to exclude prejudiced SAIL, and thus fails to demonstrate that it constituted an abuse of discretion

### a.     Plaintiff Waived Objections By Failing to Raise Them at the Administrative Level

To the degree that the Plaintiff now argues that exclusion of its five-day disclosure was prejudicial because it prevented the introduction of "crucial witness evidence," the Plaintiff waived that argument by failing to raise it in front of the Hearing Officer.  During the hearing, the Plaintiff SAIL failed to raise any argument that it would be prejudiced by exclusion of its witnesses, and instead only argued that the disclosure should be admitted because "both of the documents were in possession of counsel."  <u>See</u> AR at 124:18-125: 4.  When a party appealing an administrative determination fails to raise an issue in the forum below, that argument is waived.  <u>Seafarers Intern. Union of North America v. U.S.</u>, 891 F.Supp. 641, 650 (D.D.C. 1995). Therefore, the Plaintiff is barred from arguing for the first time before this Court that the Hearing Officer erred in excluding Plaintiff's untimely five-day disclosure because Plaintiff was relying on "crucial witness evidence."

19

### b.    Plaintiff Claims No Prejudice From Exclusion of Only Two Disclosed Documents

Plaintiff correctly admits the paucity of documents in its untimely five-day disclosure: the disclosure contained only two documents.  <u>See</u> AR at 81-82.  The first document in SAIL's untimely disclosure was its Motion to Join DCPS as a Necessary Party, filed with the Student Hearing Office on August 1 and unresolved as of the date of the hearing.  <u>See</u> AR at 83-85.  The substance of that motion was argued and determined at the hearing.  The second document SAIL attempted to untimely disclose was two pages of notes from the July 14, 2006, Resolution Meeting.  <u>See</u> AR at 86-87.  Plaintiff does not allege that the Hearing Officer's decision to exclude this document resulted in any prejudice to SAIL.

### c.    The Hearing Officer Permitted Plaintiff to Present All Witnesses It Attempted to Call

Plaintiff's untimely disclosed witness list contained the names of only four witnesses, including the parent, a party and a witness at the hearing for the Defendant.  <u>See</u> AR at 81.  Plaintiff was permitted to cross examine the parent extensively.  <u>See</u> AR at 416: 15-474: 17.  The three remaining names on SAIL's untimely disclosed witness list were Jenna Umansky, SAIL special education coordinator; Esteban Morales, SAIL principal; and Katy Rizvi, speech-language pathologist.  <u>See</u> AR at 81.  Hearing Office Butler-Truesdale permitted Plaintiff to call Ms. Umansky as a rebuttal witness.  <u>See</u> AR at 480: 20-21.

Counsel for SAIL was permitted to examine Ms. Umansky with regard to the scope of the parent's evidence.  <u>See</u> AR at 483: 2-492: 6.  Counsel for SAIL was only barred from introducing evidence regarding an August 8 MDT meeting.  <u>See</u> AR at 15-16.  There was no document in SAIL's untimely five-day disclosure concerning such a meeting, and counsel for

parent objected to evidence from Ms. Umansky on that basis.  See AR at 489: 14-15 (arguing

that the Hearing Officer had previously excluded evidence regarding an August 8 meeting); see

also AR at 471: 1-5 (arguing, prior to Umansky testimony, that evidence regarding an August 8

meeting was not supported by SAIL's untimely disclosed documents).  Following the conclusion

of his cross examination of Ms. Umansky, counsel for SAIL rested his case.  See AR at 492: 9.

Counsel for SAIL did not call Esteban Morales or Katy Rizvi as rebuttal witnesses, and therefore

Hearing Officer Butler-Truesdale did not exclude those witnesses.

     Plaintiff failed to raise any argument at the time of the Hearing Officer's decision about

prejudice stemming from the exclusion of their witness list.  Further, the scant evidence excluded

in Plaintiff's untimely five-day disclosure would not have provided any support for subjects

barred from Plaintiff's direct and cross examinations of witnesses.  Finally, the decision to

exclude Plaintiff's untimely disclosure had no practical effect on Plaintiff's "crucial" witness

evidence, because Plaintiff was permitted to examine or cross-examine two witnesses on its

witness list, and made no attempt to call the remaining two.

     Plaintiff alleges, without citation to the record or supporting affidavits, that the Hearing

Officer's decision to exclude its five-day effectively prevented Plaintiff from presenting "one of

the most important issues for SAIL's defense[:] the August 8, 2006 meeting."  See Plaintiff's

Memorandum at 8.  However, Plaintiff's excluded five-day disclosure made no reference at all to

the substance of that meeting.

     Plaintiff has failed to demonstrate by a preponderance of the evidence that the Hearing

Officer's decision to exclude Plaintiff's untimely five-day disclosure was an abuse of discretion

resulting in unfair prejudice to Plaintiff, or even to demonstrate any evidentiary support for that

contention.  Therefore, Defendant Hawkins respectfully requests that this Court deny Plaintiff's

Motion for Summary Judgment with regard to allegations of error and abuse of discretion in the

Hearing Officer's decision to exclude Plaintiff's untimely five-day disclosure as waived at the

administrative level, and not supported by a preponderance of the evidence.

> **2.    Hearing Officer Did Not Err in Denying Plaintiff's Motion to Join DCPS as a Necessary Party**

Plaintiff alleges that Hearing Officer Butler-Truesdale erred by failing to join DCPS as a

necessary party, on SAIL's oral motion at the Due Process Hearing.  Plaintiff alleges that this

decision by Hearing Officer was in error because it occurred after an August 8, 2006, MDT

meeting concerning the 2006-2007 education of D.H., at which a DCPS employee participated.

See Plaintiff's Memorandum at 9.  Plaintiff argues that the events of the August 8, 2006, meeting

inextricably implicated DCPS as a necessary party to the case because DCPS "agreed to retain

jurisdiction over the student and take on responsibility for the student's 2006-2007 school year"

through its actions at the meeting.  Plaintiff fails to show any support, through citation to the

administrative record or affidavits, to support its assertion that DCPS "agreed to retain

jurisdiction over" D.H. in any manner.

> **a.    Plaintiff Does Not Appeal the July 13, 2006 HOD Determining That DCPS Was Not a Necessary Party**

On July 13, 2006, Hearing Officer David Smith denied SAIL's first Motion to Join DCPS

as a Necessary Party.  See AR at 46.  Hearing Officer Smith found that the allegations of denial

of FAPE in parent's complaint were solely against SAIL, and that the complaint alleged no facts

implicating DCPS in denying FAPE.  See id.  Hearing Officer Smith found that,

"notwithstanding the parent's requested remedy of a placement," Plaintiff SAIL "as its own

LEA, may be able to provide the relief requested should it be determined there was a denial of FAPE." See id. In its Motion, SAIL makes no allegations of factual or legal error, or abuse of discretion, regarding Hearing Officer Smith's denial of SAIL's Motion to Join DCPS.

> **b.    DCPS Was Not a Necessary Party At the Time of the Due Process Hearing**

At the Due Process Hearing, counsel for SAIL asserted that DCPS was a necessary party because a DCPS employee had participated in an August 8, 2006 MDT meeting, and by that action had "accepted jurisdiction of the child." See AR at 140: 4-9. Counsel for parent argued that the voluntary participation of a DCPS employee at the August 8 meeting did not have the effect of making DCPS a necessary party to the complaint. Counsel for parent argued that the ruling by Hearing Officer Smith denied joinder of DCPS because the complaint included allegations that SAIL alone, as its own LEA, had failed to provide FAPE to D.H. See AR at 164: 8-11. Counsel for parent noted that SAIL did not raise any factual allegations contrary to Hearing Officer Smith's earlier ruling. See AR at 189: 21-190: 1. Counsel for parent noted five separate decisions by judges in the U.S. District Court for the District of Columbia determining that when a parent files a due process complaint against an LEA Charter School, DCPS is not a necessary party unless DCPS has been directly involved in the actions that denied FAPE to the child. See AR at 156: 4-9.

In one decision noted by parent, Judge Rosemary Colyer determined that "LEA Charters . . . must . . . 'be responsible for implementation of all agreements or decisions resulting from . . . due process hearings involving children enrolled in their school, unless implementation of the agreement . . . is the responsibility of DCPS as a result of any actions or inactions of DCPS while a child had been enrolled at an LEA Charter school or pursuant to federal or local law or

regulation." IDEA Pub. Charter Sch. v. Belton, C.A. No. 05-467, Memorandum Opinion issued

March 15, 2006, at 4 (citing 5 DCMR § 3019.13); see also Hyde Leadership Pub. Charter Sch. v.

Clark, 424 F.Supp.2d 58, 59 (D.D.C. 2006); Friendship Edison Pub. Charter Sch. v. Smith ex rel.

L.S., 429 F.Supp.2d 195, 197 (D.D.C. 2006); Friendship Edison Pub. Charter Sch.v. Murphy,

448 F.Supp.2d 166, 170 (D.D.C. 2006).  Judge Colyer dismissed DCPS as a party from the case

because "DCPS played no role in the School's decisions at issue," and thus was not a party to

allegations of denial of FAPE lodged solely against the LEA Charter School.  See id. at 7.

Counsel for parent noted that, of necessity, the complaint in this case could not name

DCPS as a party because D.H. had only attended charter schools, and had had no contact with

any DCPS teacher, administrator or official.  See AR at 132: 2-7.  Similarly, counsel for DCPS

argued that there were no allegations in the complaint for which DCPS could be held

responsible, because DCPS had had no contact with the child.  See AR at 143: 14-15.  Therefore,

counsel for DCPS argued that the school system was not a necessary party to the complaint.  See

AR at 146: 10-13.  In denying SAIL's motion to join DCPS as a necessary party, the Hearing

Officer found that events that occurred after the filing of the complaint did not moot parent's

allegations that SAIL denied FAPE to D.H. and that events that occurred after the complaint was

filed – such as the August 8 meeting - were irrelevant to resolution of the complaint.  See AR at

187: 6-9; see also AR at 232: 10-13.

In its Motion for Summary Judgment, Plaintiff makes no specific representations as to

what error the Hearing Officer made in denying SAIL's motion to join DCPS as a necessary

party.  Plaintiff shows no support, through citations to the record or affidavits, for its contention

that events after the resolution meeting were relevant to resolution of the complaint.  Plaintiff

cites neither statute nor case law to support the assertion that such events had legal relevance to the resolution of the complaint.

Plaintiff has failed to demonstrate that the Hearing Officer erred in determining that these events were irrelevant to the parent's complaint, and therefore Plaintiff has failed to demonstrate that the Hearing Officer erred in not joining DCPS as a necessary party.

**b.    DPCS Is Not a Necessary Party For the Hearing Officer to Award Funding at Katherine Thomas School**

Plaintiff raised below, and implies in its Motion, that DCPS was a necessary party because "SAIL, as an LEA, can only provide services and placements" within its own four walls. See AR at 139: 8-9; see also Plaintiff's Memorandum at 9. Since filing its first motion to join DCPS on July 6, 2006, Plaintiff has repeatedly argued that "SAIL, as its own LEA, does not have the jurisdiction to place students outside of its own LEA" and that any request to do so necessarily implicates DCPS. See AR at 29. Parent has repeatedly noted, and two hearing officers have concluded, that Plaintiff's argument is contrary to the law. See, e.g., AR at 9, 39. District of Columbia Municipal Regulations require that LEA Charter Schools take responsibility for "special education evaluations, and, if necessary, IEPs and placements for children with disabilities enrolled in their facilities." See 5 DCMR § 3019.3 (emphasis added).

Additionally, SAIL's objections even if true would not support an accusation of error in the HOD. The Hearing Officer did not order SAIL to "place" D.H. at a private placement, but instead only ordered SAIL to "fund [D.H.] at the Katherine Thomas School." See AR at 11. Plaintiff fails to demonstrate, by citations to the record, supporting affidavits or citations to caselaw or statute, that DCPS was a necessary party if the Hearing Officer had awarded placement, and fails to demonstrate that DCPS was a necessary party because the Hearing

Officer awarded funding.

          **c.**       **DCPS Did Not "Accept Jurisdiction" of D.H. Prior to the Due Process Hearing**

Plaintiff argues that "DCPS agreed to retain jurisdiction over the student and take on the responsibility for the student's placement for the 2006-2007 school year," and thereby "DCPS became a necessary party to the action." <u>See</u> Plaintiff's Memorandum at 9. The administrative record contains neither documentation nor witness testimony to support this assertion. Plaintiff is correct that if an LEA Charter School determines that it is unable to provide services to a child with a disability, it must appeal to DCPS, as SEA, to take responsibility for that child's education. <u>See</u> 5 DCMR § 3019.9. DCPS assumes legal responsibility for ensuring that the child receives FAPE <u>only if</u> DCPS agrees that the LEA Charter School is unable to serve the child. <u>See</u> 5 DCMR § 3019.11. The hearing officer found no evidence that "SAIL Public Charter School notified DCPS that it could not serve [D.H.'s] needs." <u>See</u> AR at 8. As noted above, Plaintiff did not include such evidence in the two documents of its five-day disclosure, and has not submitted affidavits with its motion to demonstrate that such an event took place. Plaintiff also makes no citations to case law or statute that shows the legal error in the Hearing Officer's ruling, and makes no argument that a preponderance of the record is contrary to the Hearing Officer's conclusion.

Therefore, Plaintiff's Motion for Summary Judgment fails to assert facts or law contrary to the Hearing Officer's finding that events subsequent to the July 14, 2006 resolution meeting were irrelevant to the resolution of parent's complaint; and fails to introduce any record citation or affidavit that demonstrates that DCPS "assumed responsibility and jurisdiction over the student." The Plaintiff has failed to demonstrate by a preponderance of the evidence that

Hearing Officer Butler-Truesdale erred in denying Plaintiff's Motion to Join DCPS.  Therefore, Defendant Hawkins respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment with regard to allegations of error in Hearing Officer's denial of SAIL's motion to join DCPS as a necessary party.

### 3.     The Hearing Officer Found Sufficient Evidence of Denial of FAPE to Support the Awarded Relief

Plaintiff alleges that Hearing Officer Butler-Truesdale erroneously found that SAIL denied FAPE by "fail[ing] to issue an appropriate Notice of Placement ("NOP")."  <u>See</u> Plaintiff's Memorandum at 10.  In fact, the Hearing Officer found that SAIL denied FAPE to D.H. "by failing to . . . ensure that Petitioner made progress in his academic program; . . . ensure the issuance of an appropriate notice of placement; or, . . . initiate SEA participation when it was determined that the Petitioner could not derive educational benefit from placement at SAIL." <u>See</u> AR at 8.  Plaintiff appears to contend that the Hearing Officer erred in finding <u>any</u> denial of FAPE.  <u>See</u> <u>id</u>. at 10-11.  The Plaintiff's argument fails to address the Hearing Officer's actual conclusions of law or findings of fact.

### a.     Plaintiff Ignores Hearing Officer's Conclusion That SAIL Denied FAPE by Failing to Ensure Academic Progress

Plaintiff fails to address the Hearing Officer's conclusion that SAIL denied FAPE by failing to ensure that D.H. made appropriate progress in his academic program at the school.  In her HOD, Hearing Officer Butler-Truesdale included a finding of fact that "A March 27, 2006 Neuropsychological Evaluation . . . determined that Petitioner is functioning two to five grade levels behind his grade []."  <u>See</u> AR at 7.  The hearing officer also found credible Dr. James's testimony that D.H. "is testing more in the Mental Retardation range although his classification

is Mentally Delayed," and that D.H.'s "performance is quite a bit lower than what would be expected since he allegedly was receiving special education services." See id. Plaintiff's Memorandum offers no evidence to contradict these findings of fact, and in fact does not address these findings at all.

To overcome the Hearing Officer's finding that Plaintiff denied FAPE by failing to ensure academic progress, Plaintiff must meet a higher burden than a mere preponderance of the evidence, because the Court owes particular deference to the findings of a hearing officer based on her assessment of witness credibility. R.D. ex rel. Kareem, 374 F.Supp. 2d at 89-90. The Plaintiff has not shown, by a preponderance of the evidence or any higher burden, that the Hearing Officer's conclusion that SAIL failed to ensure academic progress was in error. In fact, Plaintiff left those findings of fact entirely undisturbed, and merely alleges without legal or factual citation or supporting affidavits, that the Hearing Officer could not have found any denial of FAPE without first finding that SAIL denied specific special education services to D.H.

As a matter of law, a lack of academic progress is a well-established basis for a finding of a denial of FAPE. In Board of Education of the Hendrick Hudson Central School District v. Rowley, the Supreme Court ruled that the IDEA requires a school system to provide specialized instruction and related services designed to provide educational benefit to the child. 458 U.S. 176, 202 (1982). The court then examined the ways in which that educational benefit could be measured and found that the child in that was being provided a FAPE based on her measurable academic progress. Id at 203. In this case, as described above, the record supports the conclusion that D.H. was not making academic progress and therefore supports the Hearing Officer's finding of a denial of FAPE.

### b.    Hearing Officer Did Not Err in Concluding That SAIL Denied FAPE by Failing to Initiate SEA Participation

Hearing Officer Butler Truesdale made specific findings of fact regarding SAIL's alleged attempts to refer D.H. to the SEA.  The Hearing Officer noted that parent testified that SAIL employees had "never said that SAIL was an inappropriate placement," and that the sole rebuttal witness Plaintiff attempted to present "testified on cross examination that she did not discuss the appropriateness of SAIL . . . with [parent]."  See AR at 7.  Additionally, the Hearing Officer found that "no evidence was presented indicating that SAIL Public Charter School notified DCPS that it could not serve [D.H.'s] needs."  See AR at 8.  The hearing officer found credible parent's testimony that "she has never received a notice of placement from DCPS with respect to placement for [D.H.]"  See AR at 7.

In addressing the inappropriateness of SAIL as a placement for D.H., the Hearing Officer found that "Petitioner's IEPs from March 15, 2006 and March 15, 2005 provide[] for 100% out of full time special education."  See AR at 6.  The hearing officer found credible parent's testimony that "all of [D.H.'s] IEPS from the second grade forward required the same level of services."  See AR at 7.  Counsel for SAIL admitted at the hearing that SAIL was "guilty of . . . not moving immediately to notifying DCPS three years ago" that it was an inappropriate placement for D.H.  See AR at 250: 9-11.  The hearing officer found that, at the July 14, 2006 resolution meeting, SAIL "acknowledged that it could not provide educational benefit" to D.H. See AR at 8.

The Plaintiff has not shown, by a preponderance of the evidence, that the Hearing Officer incorrectly found that SAIL denied FAPE to D.H. by failing to initiate SEA participation when SAIL determined that it could not provide appropriate services to D.H.  The Hearing Officer

found that SAIL failed to present evidence showing that it had initiated contact with DCPS as the

SEA. The Plaintiff presents no factual citation or supporting affidavit to overcome that finding.

Further, counsel for SAIL admitted at the hearing that the school was aware, three years prior to

parent's complaint, that it was unable to provide full-time special education services to D.H.

despite IEPs developed by SAIL staff calling for full-time special education services. The

Plaintiff makes no legal argument, and provides no legal citations, to show that the Hearing

Officer should have found that SAIL properly attempted to refer D.H. to DCPS, or that SAIL did

so in a timely fashion.

Therefore, Defendant Hawkins respectfully requests that this Court deny Plaintiff's

Motion for Summary Judgment with regard to allegations of error in Hearing Officer's finding

that SAIL denied FAPE to D.H. by failing to ensure academic progress and failing to initiate

SEA participation when SAIL determined it could not provide educational benefits to D.H.

### 4.    Parent Meets the <u>Reid</u> Standard For a Compensatory Education Award

Plaintiff argues that Hearing Officer Butler-Truesdale was in error in awarding

compensatory education. Plaintiff argues that the compensatory education award was erroneous

because parent failed to meet the appropriate legal standard to justify such an award. <u>See</u>

Plaintiff's Memorandum at 11-13. Plaintiff argues that the parent failed to meet the standard,

established in <u>Reid v. District of Columbia</u>, by which hearing officers should determined when

and how much compensatory awards are appropriate. <u>See</u> <u>id</u>. at 13. In <u>Reid</u>, the U.S. Court of

Appeals for the District of Columbia Circuit determined that a hearing officer, and then a U.S.

District Court judge, erred in applying a mechanical standard to determined the appropriate

amount of compensatory education, without any further explanation. 401 F.3d 516, 522

(C.A.D.C. 2005).  The Circuit Court rejected standards that awarded compensatory education on a basis of one hour for every day that FAPE was denied, and on a basis of one hour for every hour that FAPE was denied.  Id. at 523.  Instead, the Circuit panel endorsed a "flexible approach" that was "reasonably calculated to provide the educational benefits that likely would have accrued from special education services the school district should have supplied in the first place.  Id. at 524.  The record provides sufficient support under the Reid standard for the Hearing Officer's determination that compensatory education services were warranted here.

### a.   The Hearing Officer's Conclusions That SAIL Denied FAPE Are Sufficient to Support an Award of Compensatory Services

Plaintiff alleges that the Hearing Officer had no legal basis for a compensatory education award because she did not conclude that SAIL had failed to deliver specific special education services.  See Plaintiff's Memorandum at 12.  However, the Plaintiff's argument ignores the Hearing Officer's conclusion that SAIL had denied a FAPE to D.H., among other omissions, by failing to ensure that D.H. made progress in his academic program.  See AR at 8.  As noted above, the hearing office made her conclusion based on evidence presented in parent's five-day disclosure and on testimonial evidence presented by parent's witnesses during the hearing.  See supra at (3)(a).  Such a conclusion supports an award of compensatory education services, since such an award is intended to "correct the results of a school system's past violations and confer the educational benefits contemplated by proper implementation of the Act in the first instance."  Diatta v. District of Columbia, 319 F.Supp. 2d 57, 66 (D.D.C. 2004).  Plaintiff makes no attempt to address the adequacy of such a conclusion as a basis for a compensatory education award.

### b.   The Record Supports an Award of Specific Compensatory Services

Plaintiff alleges that this standard was not met because the "award . . . is completely unsupported by the record."  See Plaintiff's Memorandum at 12.  Plaintiff is simply wrong as to this assertion.  As part of her five-day disclosure prior to the Due Process Hearing, parent submitted a neuropsychological report by licensed psychologists Dr. James and Dr. Lauren Krivitzky.  See AR at 644-650.  In that neuropsychological report, the psychologists made specific recommendations for D.H.'s academic program.  See AR at 642-646.  Dr. James and Dr. Krivitzky recommended, among other services, that D.H. should receive "individualized, systematic, daily reading instruction by a reading specialist"; a specific eight-step routine by which D.H. should produce written work; and "explicit, concrete and step-by-step" math instruction "supplemented with manipulatives, concrete examples, demonstration, modeling and verbal descriptions."  See AR at 642-644.  Drs. James and Krivitzky also specifically recommended that D.H. have access to "a personal word processor provided by the school" to assist in his overcoming reading difficulties.  See AR at 642.

Further, in testimony during the hearing, Dr. James recommended that D.H. receive "individualized attention" in an "environment that is structured and small."  See AR at 338: 16-18.  She also recommended, in her testimony, that D.H. needed "a very systematized and specialized instruction . . .  in reading, in math, in written expression."  See AR at 339: 3-5.  Specifically, she testified that "there is quite a bit of research to support a daily systematized reading instruction, phonics-based, that focuses on reading fluency and oral reading and also addresses written language and written expression and organizing that."  See AR at 339: 6-11.  She testified that "mathematics would be similar in terms of specialized instructions . . . and special techniques in teaching math."  See AR at 339: 12-17.  In her findings of fact, Hearing

Officer Butler-Truesdale found that the Compensatory Education Plan submitted by parent "is comprehensive and addresses needs identified by related evaluations." See AR at 8.

The record evidence is sufficient to show that the compensatory education services awarded by the Hearing Officer meet the Reid standard because the award is tailored to meet specific needs of the student, and is not the result of a mathematic, mechanical, hour-per-hour calculation.

### c.    Plaintiff Incorrectly Alleges That the Record Shows That D.H. Made Sufficient Academic Progress

Plaintiff alleges that the record findings supporting specific compensatory services are insufficient because, per Plaintiff's theory, "the record clearly reflects that the student was making progress." See Plaintiff's Memorandum at 12. Plaintiff ignores actual record evidence that D.H. was not making academic progress on the basis of SAIL services alone. Parent testified that, prior to the year she filed her complaint, she had hired tutors to address deficits in D.H.'s academic instruction. See AR at 421: 7-10. Parent testified that she felt "like I should not have had to have tutors . . . . [h]e should be getting what he needs in the placement he is in." See AR at 422: 6-8.

In addition, Plaintiff ignores the Hearing Officer's actual findings regarding D.H.'s academic progress, and the testimony that was the basis for those findings. At the Due Process Hearing, Dr. James testified that, shortly before the end of his seventh grade year, D.H. was reading at an "early third grade level," his arithmetic was at a "mid third grade level," and his mathematic reasoning was at an "early fourth grade level." See AR at 300: 12-19. She testified later that as "a rising eighth grade . . . with skills that are between a second and fourth grade level," he would "struggle much more academically." See AR at 335: 11-21. Hearing Officer

33

Butler-Truesdale included in her HOD a finding of fact that "A March 27, 2006

Neuropsychological Evaluation performed by Dr. Joette James determined that [D.H.] is

functioning two to five grade levels behind his grade level." See AR at 7.  The hearing officer

also included a finding of fact that "During the hearing Dr. Joette James credibly testified that

[D.H.'s]Evaluation revealed that he is testing more in the Mental Retardation range although his

classification is Mentally Delayed." See AR at 7.  She also found that Dr. James testified that

"his performance was lower than what would be expected since he allegedly was receiving

special education services." See AR at 7.

Therefore, credibility judgments of witness testimony served as the basis for the Hearing

Officer's determination that there was sufficient lack of progress to justify compensatory

services, the Court owes particular deference to the Hearing Officer's findings, and to overturn

such a finding the Plaintiff is held to the heightened burden imposed by R.D. ex rel. Kareem.  In

its Memorandum, the Plaintiff makes absolutely no attempt to show that the Hearing Officer's

findings were erroneous, or that the Hearing Officer erroneously judged Dr. James's credibility.

Plaintiff has not met the preponderance of the evidence standard normally imposed on parties

challenging hearing officer determinations, let alone the heightened deference due to hearing

officer credibility determinations.

The Plaintiff fails to address all conclusions of denial of FAPE as a basis for the

compensatory services award, incorrectly asserts that there is no record evidence to support the

specific services awarded, and fails to show error by the Hearing Officer in finding that D.H. did

not make appropriate academic progress.  Therefore, Defendant Hawkins respectfully requests

that this Court deny Plaintiff's Motion for Summary Judgment with regard to allegations of error

34

in hearing officer's award of compensatory services.

> **5.    The Hearing Officer's Consideration of Parent's Compensatory Education Plan Was Not An Error or Abuse of Discretion**

Plaintiff argues that Hearing Officer Butler-Truesdale erred in permitting submission of the parent's compensatory education plan, and then abused her discretion by considering that plan in reaching her determination on parent's complaint.  <u>See</u> Plaintiff's Memorandum at 13-15.  However, because the Hearing Officer found a sufficient basis under <u>Reid</u> to support an award of compensatory services, it was appropriate for the Hearing Officer to then consider what compensatory services were warranted.

The compensatory education plan submitted by parent post-hearing was only intended to present a request for a specific "form and amount" of compensatory education.  <u>See</u> AR at 504: 15-26; <u>see also</u> AR at 742 (noting that the attached compensatory education plan "outlines what services [D.H.] requires to make up for SAIL's past denials of FAPE, and the length of time those services should be administered").  Further, counsel for parent noted at the hearing that she believed she had presented sufficient evidence from Dr. James to show the compensatory education services necessary for D.H.  <u>See</u> AR at 504: 13-15.  Rather than finding that compensatory education was only supported by the parent's post-hearing plan, the Hearing Officer made a finding of fact that "[parent's] recommended Compensatory Education Plan is comprehensive and addresses needs identified by related evaluations."  <u>See</u> AR at 8.

As noted above, Plaintiff simply ignores the record evidence regarding D.H.'s actual educational deficits as reported in the neuropsychological report and in Dr. James's testimony.  Plaintiff also failed to address the Hearing Officer's specific finding that such evidence was credible, and that the parent's compensatory education plan was "related" to such evaluations

35

and evidence.  Plaintiff has failed to demonstrate specific error or abuse of discretion by the Hearing Officer in finding that compensatory education was warranted.

Additionally, Plaintiff argues that it was unfair, and an abuse of discretion, for the Hearing Officer to consider parent's Compensatory Education Plan, submitted post-hearing, because the Plaintiff's five-day disclosure was barred.  See Plaintiff's Memorandum at 14.[1] Plaintiff argues that "either all evidence not disclosed five days prior to the hearing will be barred, or . . . the Hearing Officer should have given the same leniency to SAIL."  See Plaintiff's Memorandum at 14.

Plaintiff's argument ignores SAIL's own request that the hearing record remain open post-hearing.  In cross-examining the parent, counsel for Plaintiff alleged that he could submit IEPs for D.H., prior to the 2005-2006 school year, that would show that D.H. had not received full-time special education.  See AR at 431: 20-22.  To that end, counsel "request[ed] the record remain open for a week for us to do that."  See AR at 432: 2-3.  In discussing the compensatory education plan, Hearing Officer Butler-Truesdale noted that she would permit parent's plan to be submitted because she had agreed to "leave the record open for him."  See AR at 505: 5. Counsel for SAIL raised no objection to the Hearing Officer's stated intent to permit post-hearing submission of the compensatory education plan.

Plaintiffs did submit a post-hearing "Praecipe" on September 1, 2006.  See AR at 725-738.  The Praecipe did not contain the promised IEPs.  Defendant Hawkins submitted an Opposition to SAIL's Praecipe, as well as the Compensatory Education Plan.  See AR at 739-46.

---

[1]     Plaintiff actually argues that it was "barred . . . from putting on any evidence."  See Plaintiff's Memorandum at 14.  As discussed above in (2), SAIL only attempted to introduce two documents into evidence, was permitted to extensively cross examine one witness on its witness list, to present another as a "rebuttal witness," and did not attempt to introduce any other witnesses.

Nevertheless, the Hearing Officer considered both SAIL's Praecipe and parent's Compensatory Education Plan "as a matter of equity." <u>See</u> AR at 5.

In complaining of the Hearing Officer's "preferential treatment and bias," the Plaintiff makes no specific citations to support such allegations, nor does it rely on supporting affidavits. Moreover, such allegations are contradicted by the requests of counsel for Plaintiff at the hearing, Plaintiff's own post-hearing submissions and the Hearing Officer's determinations regarding such submissions.

### 6. Plaintiff Waived Opportunity to Object to Post-Hearing Submissions By Leaving Prior to the Conclusion of the Hearing

The Plaintiff argues against submission of the compensatory education plan are untimely, and were waived at the time of the hearing. Counsel for Plaintiff "ask[ed] permission" to leave before the hearing was adjourned. <u>See</u> AR at 507: 11-16. The hearing officer noted that if counsel for Plaintiff wanted to leave prior to adjournment, "you know how to represent your client, and if you feel that it's appropriate to leave, I have nothing to say about it." <u>See</u> AR at 508: 8-10. Counsel for Plaintiff did not ask the Hearing Officer to adjourn the hearing at that point. Counsel for Plaintiff knew before his request that counsel for parent intended to make a closing argument. <u>See</u> AR at 507: 8 (counsel for parent requests opportunity to make a closing argument). Nevertheless, counsel left the hearing prior to adjournment. <u>See</u> AR at 508: 11-12; <u>see also</u> AR at 5 (noting counsel for SAIL's departure "prior to adjournment").

Counsel for the parent reaffirmed the submission of the compensatory education plan with the Hearing Officer following counsel for Plaintiff's departure. Counsel for Plaintiff did not remain at the hearing until adjournment to make a closing argument, and instead made a knowing and informed decision to depart the hearing prior to adjournment. He did not request

adjournment, and was apprised prior to his departure that the remaining parties intended to continue the proceedings even if he did leave. Therefore, it is untimely for Plaintiff to raise these objections on appeal to the District Court.

In alleging that the Hearing Officer erred and abused her discretion in considering parent's Compensatory Education Plan, Plaintiff fails to show specific errors by the Hearing Officer in finding that the compensatory education plan was warranted by demonstrated educational deficits; ignores record evidence of such deficits and also evidence of specific compensatory services to address them; ignores its own request that the record be left open following the hearing, and ignores its own post-hearing submissions; and ignores its own counsel's waiver of objections by leaving the hearing prior to adjournment. Therefore, Defendant Hawkins respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment with regard to allegations of error and abuse of discretion in hearing officer's consideration of parent's compensatory education plan.

## II.    The Court Should Grant Defendant's Motion for Summary Judgment

### A.    Standard of Review for Summary Judgment

To be granted summary judgment, Defendant Hawkins must demonstrate that there are no issues of material fact as to which there is a genuine dispute, and that they are entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). The party seeking summary judgment must demonstrate an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

### B.    Standard of Review of Hearing Officer's Determination

A decision made at a due process hearing is final, except that any party aggrieved by the findings and decision shall have the right to appeal those findings in a district court of the United States.  20 U.S.C. §§ 1415(i)(1)(A), 1415(i)(2)(A).  In reviewing the determinations of IDEA due process hearings, the Court must determine whether a plaintiff is entitled to judgment based on a preponderance of the evidence contained in the Court and administrative records.  Rowley, 458 U.S. at 205.   Courts must give administrative proceedings due weight, and factual findings from the administrative proceedings are to be considered prima facie correct.  A.I. ex rel. Iapalucci v. District of Columbia, 402 F.Supp.2d 152, 161 (D.D.C. 2005).  Where, as here, neither party seeks to introduce additional evidence, a motion for summary judgment operates as a motion for judgment on evidence comprising the record.  Anthony v. District of Columbia, 463 F.Supp.2d 37, 40 (D.D.C. 2006).  As demonstrated above, the Hearing Officer's Decision was well-reasoned, as the Hearing Officer cited to the evidence and her determination as to witness credibility in making findings of fact, and her conclusions of law were supported by the law.

**C.     Defendant Hawkins Has Demonstrated That a Preponderance of the Evidence Supports Affirming the Hearing Officer's Determination**

This Court should give the HOD due weight, and consider its findings prima facie correct.  Iapalucci, 402 F.Supp.2d at 161.  Additionally, the Court should only reverse the HOD if the Court is satisfied that the Plaintiffs have shown by a preponderance of the evidence that it is wrong.  Block v. District of Columbia, 748 F.Supp. 891, 895 (D.D.C. 1996).  As discussed above, the Plaintiff fails to show that a preponderance of the evidence supports reversing the Hearing Officer's Determination.  The hearing officer makes findings of fact and conclusions of law that are well-reasoned and supported by evidence on the record.  The Plaintiff does not allege specific errors in those findings and conclusions.  As Defendant has demonstrated in

previous paragraphs and arguments, the evidence on the record supports the Hearing Officer's decision, and therefore this Court should find that the HOD was correct as a matter of law. Therefore, this Court should uphold the Hearing Officer's Determination.

### D.    Defendant Is Entitled to Judgment As a Matter of Law

The Hearing Officer concluded that DCMR section 3019 demonstrated that Plaintiff had jurisdiction to provide all adequate relief to D.H.  See AR at 9.  In particular, DCMR requires that LEA Charter Schools provide "special education evaluations, and, if necessary, IEPs and placements for children with disabilities enrolled in their facilities."  See 5 DCMR § 3019.3 (emphasis added).  The regulations also require that LEA Charter Schools "shall . . . be responsible for implementation of all . . . decisions resulting from . . . due process hearings involving children enrolled in their school."  See 5 DCMR § 3019.13.

In this case, the Hearing Officer found no evidence that "SAIL . . . notified DCPS that it could not serve [D.H.'s] needs."  See AR at 8.  Therefore, Plaintiff was responsible for providing special education services for D.H. as a child enrolled in Plaintiff's LEA Charter School; Plaintiff was responsible for providing services including placement for D.H.; and Plaintiff was and is responsible for implementing an HOD resulting from a due process hearing involving D.H. as a child enrolled in its school.  Therefore, based on an LEA's clear obligations to special education students enrolled in their school under the IDEA and based on the above DCMR provisions, Defendant Hawkins is entitled to judgment as a matter of law.

### E.    Plaintiff Has Not Complied With the Hearing Officer's Determination

Plaintiff appealed the Hearing Officer's Determination pursuant to 20 U.S.C. § 1415(i)(2)(A), permitting appeal of such HODs for any party aggrieved by the determination.

Plaintiff did not move this Court to stay, or to issue an injunction against, enforcement of the HOD.

Plaintiff's failure to comply occurred despite the fact that the Hearing Officer ordered it to fund, among other relief, D.H. at a private school placement for the 2006-2007 school year. Plaintiff simply refused to pay the tuition to Katherine Thomas, even after the school sought funding from SAIL in compliance with the HOD.  See Ex.1; see also Ex.2.  In addition to non-compliance with the HOD's order to fund D.H. at the Katherine Thomas School, the Plaintiff did not comply with any other orders of the HOD.  They did not provide any ordered compensatory education during the 2006-2007 school year or the beginning of the 2007-2008, and Defendant DCPS did not agree to provide funding for such services.  The Plaintiff did not comply with the HOD's order to reimburse Plaintiff for reasonable attorney's fees and costs, despite repeated timely requests by counsel for parent.  See Exhibit 3, Letter from parent's counsel to SAIL's counsel dated September 28, 2006; see also Exhibit 4, Letter from parent's counsel to SAIL's counsel dated November 27, 2006.

Finally, Katherine Thomas, the private school at which the hearing officer ordered funding for D.H., notified Defendant DCPS that it would be compelled to discharge D.H. due to Plaintiff's non-compliance with the HOD.  See Exhibit 5, Letter from Katherine Thomas School to Counsel for DCPS dated November 16, 2006.  In the face of that imminent threat of discharge, Defendant Hawkins sought a preliminary injunction through the Blackman Class Action to ensure D.H.'s continued attendance at his ordered placement.  See Blackman v. District of Columbia, C.A. No. 97-1629, Claim of Michelle and Carlton Hawkins, parents of D.H., Motion for Preliminary Injunction filed November 28, 2006.  Defendant Hawkins filed for the injunction

41

claiming that DCPS, as SEA, was responsible for ensuring that the Plaintiff SAIL functioned as

its own LEA complied with the HOD.  See id. at 7-8.  In adjudicating that motion, the District

Court determined only that Defendant DCPS had provided funding for D.H. during the 2006-

2007 school year.  See Blackman, Final Order in the Claim of Michelle and Carlton Hawkins,

parents of D.H., filed Sept. 4, 2007.

    In the face of these facts, the Plaintiff simply asserts that compliance with the Hearing

Officer's determination would be "premature."  See Answer of Plaintiff SAIL to Defendant

Hawkins' Counterclaims at 3-4.  Plaintiff's assertion ignores settled law in the District of

Columbia.  The District of Columbia has been held liable for failing to timely comply with

hearing officer's determinations.  See Blackman v. District of Columbia, C.A. No. 97-1629,

Order and Opinion issued May 14, 1998 (defining the "Jones" subclass as "[a]ll children, now

and in the future, who are entitled to have DCPS [as LEA] provide them with a free appropriate

public education and who have been denied the same because  DCPS . . . has failed to fully and

timely implement the determinations of hearing officers").  In the instant case, the Plaintiff, as a

"party aggrieved," appeals a hearing officer's determination under the provisions of the IDEA.

However, 20 U.S.C. § 1415(i)(2)(A), providing appeals of HODs for aggrieved parties, does not

grant such appellants an automatic stay, restraining order or injunction of the appealed-from

order.

    Instead, there are provisions that allow a court to issue such an equitable order.  A

plaintiff may move to seek an injunction under Federal Rule of Civil Procedure 65(a).  In the

District of Columbia, a plaintiff who so moves must demonstrate that: (1) it is likely to prevail

on the merits; (2) without the relief requested it will suffer irreparable injury; (3) the issuance of

the injunction would not substantially harm other interested parties; and (4) the public interest

lies with the granting of the injunction.  Virginia Petroleum Jobbers Ass'n v. Federal Power

Commission, 259 F.2d 921, 925 (D.C. Cir. 1958); see also Washington Metro. Area Transit

Comm'n v. Holiday Tours, Inc., 559 F.2d 841, 843 (D.C. Cir. 1977).

Plaintiff's assertion that it need not comply with the HOD simply because compliance

would be "premature" would obviate the need for Rule 65 and any of the factors necessary to

win a preliminary injunction enunciated in Virginia Petroleum Jobbers.  A plaintiff appealing an

administrative order could simply assert that any compliance is premature, and through that

assertion end the court's inquiry into whether that plaintiff would likely succeed on its challenge;

whether the plaintiff would suffer an irreparable injury through compliance with the order;

whether the plaintiff's non-compliance harms any other interested parties; or whether the public

interest supports the plaintiff's non-compliance.  In this case, Plaintiff opted not to demonstrate

any of these factors, but offers no legal support for his failure to do so.  This assertion is contrary

to the legislative intent underlying the creation of Rule 65, and finds no support in statute or case

law.

Therefore, Defendant Hawkins respectfully requests that this Court order the Plaintiff to

immediately implement all provisions of the Hearing Officer's Determination issued September

19, 2006.  Specifically, Defendant Hawkins requests that the Court order the Plaintiff to

reimburse Defendant DCPS the amount necessary to fund D.H. at the Katherine Thomas School

for the 2006-2007 and 2007-2008 school years, as the new school year has already begun and

this placement continues to be D.H.'s current school placement.  Defendant Hawkins requests

that the Court order the Plaintiff to provide funding for the ordered Extended School Year

43

Services and compensatory education at the Katherine Thomas School, and reimburse the parent for reasonable attorneys fees and costs awarded by the Hearing Officer in the underlying HOD, as well as attorneys fees and costs for the preliminary injunction filed to ensure that D.H. could remain in his HOD-ordered placement in the face of SAIL's noncompliance. Defendant Hawkins also respectfully requests that, pursuant to 42 U.S.C. §§ 1983 and 1988, this Court order Plaintiff to pay reasonably attorney's fees and costs based on non-implementation of the HOD, and for defending the current claim.

## CONCLUSION

Plaintiff asks this Court to reverse the Hearing Officer's Determination, but to succeed, Plaintiff must demonstrate by a preponderance of the evidence that the Hearing Officer's findings of fact and conclusions of law were erroneous or an abuse of discretion. Plaintiff failed to address any individual finding of fact or conclusion of law in the HOD, and failed to demonstrate by a preponderance of the evidence that the HOD was erroneous or resulted from an abuse of discretion. Therefore, Defendant Hawkins respectfully requests that this Court deny the Plaintiff's Motion for Summary Judgment.

Because Plaintiff failed to meet its burden, Defendant Hawkins respectfully requests that this Court find that there are no material facts at issue. Defendant Hawkins also respectfully requests that this Court enter judgment upholding the Hearing Officer's Determination; and ordering Plaintiff to comply with all provisions of the HOD; and finding that Plaintiff is required to fund D.H. at the HOD-ordered placement as a matter of law; and also that this Court order Plaintiff to reimburse the Defendant for reasonable attorney's fees and costs.

Respectfully Submitted,
/s/ Donna Wulkan

44

Donna L. Wulkan
D.C. Bar No. 370961
1765 N Street, N.W.
Washington, DC 20036
202-682-3909
202-955-1015 (facsimile)
Attorney for Plaintiff

<u>Certificate of Service</u>

I hereby certify that a copy of the foregoing document with its attachments was filed electronically on this 24th day of September, 2007.

<u>/s/ Donna Wulkan</u>
Attorney for Plaintiff

45

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **THE SCHOOL FOR ARTS** | ) | |
| **IN LEARNING ("SAIL")** | ) | |
| **PUBLIC CHARTER SCHOOL,** | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v | ) | **Civil Action No. 06-1821 (TFH)** |
| | ) | |
| **MICHELLE HAWKINS, et al.,** | ) | |
| | ) | |
| Defendants | ) | |

### DEFENDANTS MICHELLE HAWKINS AND D.H.'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Fed. R. Civ. P. Rule 56 and Rule LCvR 7(h), the Defendants hereby submit the following Statement of Material Facts as to Which There is No Genuine Issue:

1. Defendant D.H. is a fifteen-year-old child. AR at 116:16-17; AR at 636.

2. Defendant Michelle Hawkins ("parent") is the mother of D.H. AR at 24.

3. The School for Arts In Learning Public Charter School ("SAIL") is a District of Columbia Public Charter School. AR at 727.

4. SAIL elected to serve as its own Local Education Agency ("LEA") for special education purposes. AR at 33; AR at 509: 21-22.

5. DCPS is the State Education Agency ("SEA") for IDEA purposes for all District of Columbia LEAs, including public schools and public charter schools. AR at 730.

6. D.H. began attending SAIL at the end of his first grade year. AR at 6.

7. D.H. attended SAIL for seven full years, starting with second grade and including two years of sixth grade. AR at 6.

8. D.H. attended SAIL through the end of seventh grade in June 2006. AR at 235: 4-5.

9.    D.H. had an IEP at SAIL during the 2005-2006 school year.  AR at 702.

10.   D.H.'s IEP for the 2005-2006 school year was a full-time IEP, providing for 32 hours per week, or 6 hours and 24 minutes per day, of special instruction.  AR at 702.

11.   On March 29, 2005, Erik Scott, a pediatric psychologist at Mt. Washington Pediatric Hospital in Cheverly, Maryland, conducted a psychological evaluation of D.H.  AR at 677-681.

12.   That psychological evaluation was conducted at the request and expense of parent.  AR at 677.

13.   On March 21, 2006, SAIL staff members met with parent and developed an IEP for D.H. to cover the 2006-2007 school year.  AR at 686-701.

14.   The IEP developed at SAIL for the 2006-2007 school year provided for 32 hours per week of special education instruction.  AR at 686; AR at 690.

15.   On March 27, 2006, Dr. Joette James ("Dr. James") and Dr. Lauren Krivitzky, licensed psychologists at Children's National Medical Center performed a neuropsychological evaluation of D.H.  AR at 636-650.

16.   That neuropsychological evaluation was conducted at the request and expense of parent. AR at 636.

17.   On June 23, 2006, parent filed a due process complaint against SAIL.  AR at 20-25.

18.   In the due process complaint against SAIL, parent alleged that SAIL had failed to develop an appropriate IEP; that SAIL had failed to provide for and deliver appropriate instructional and related services; that SAIL had failed to evaluate D.H. in all areas of his disability; and that SAIL had failed to ensure that D.H. made adequate progress in his academic programs.  AR at 25.

19.   Parent alleged that these failures resulted in a denial of free appropriate public education ("FAPE") to D.H.  AR at 25.

20.   The due process complaint for denial of FAPE was only against SAIL.  AR at 20-25.

21.   On July 6, 2006, SAIL filed a Motion to Dismiss or in the Alternative Motion to Join a Necessary Party, asking the Student Hearing Office to join DCPS as a party to the parent's due process complaint.  AR at 29-31.

22.   On July 7, 2006, DCPS filed a Motion to Dismiss SAIL's Motion to Join a Necessary Party.  AR at 32-36.

23.   On July 13, 2006, parent filed an Opposition to Motions to Dismiss Submitted by SAIL and DCPS and Response to SAIL's Motion to Join a Necessary Party.  AR at 37-45.

24.   On July 13, 2006, Chief Hearing Officer David Smith denied SAIL's Motion to Dismiss or in the Alternative to Join; and granted DCPS's Motion to Dismiss.  AR at 46.

25.   As its own LEA, SAIL was required to convene a resolution meeting within 15 days of receiving the due process complaint.  AR at 27

26.   SAIL convened a resolution meeting on July 14, 2006.  AR at 74.

27.   Participants at the meeting included parent, parent's attorney, the principal of SAIL, SAIL's special education coordinator, attorney for SAIL and an employee of DCPS ("DCPS employee") participating by telephone.  AR at 74.

28.   The participation of DCPS employee was procured unilaterally by SAIL on the morning of the meeting.  AR at 74.

29.   The DCPS employee's participation in the meeting was procured without notice to parent.  AR at 8; AR at 150:8-9.

30.   At the meeting, SAIL acknowledged that it was not an appropriate placement for D.H.

AR at 8; AR at 74.

31.  At the end of the resolution meeting, the complaint was not resolved.  AR at 74.

32.  An MDT meeting was scheduled for August 8, 2006, to discuss D.H.'s placement for the 2006-2007 school year.  AR at 74.

33.  On July 31, 2006, the Student Hearing Office issued a Hearing Notice scheduling the Due Process Hearing for August 30, 2006.  AR at 47-48.

34.  On August 1, 2006, SAIL filed a second Motion to Join a Necessary Party, again asking Hearing Officer Smith to join DCPS as a party to the due process complaint.  AR at 49-53.

35.  On August 4, 2006, parent submitted a Response to SAIL's Motion to Join a Necessary Party, including five evidentiary exhibits.  AR at 53-74.

36.  There was no ruling on SAIL's second Motion to Join a Necessary Party prior to the Due Process Hearing.  AR at 138:10-12.

37.  On August 23, 2006, parent timely submitted five-day disclosure, including 16 documents and a list of five prospective witnesses, to counsel for SAIL via messenger. AR at 600-724.

38.  On August 23, 2006, parent submitted a supplemental five-day disclosure, with one additional document, to SAIL via facsimile.  AR at 75-80.

39.  On August 24, 2006, SAIL submitted a five-day disclosure, including two documents and a list of four prospective witnesses, to counsel for parent via facsimile.  AR at 81-88.

40.  SAIL's five-day disclosure provided a list of four witnesses that SAIL intended to call, and two documents.  AR at 81.

41.  Neither SAIL nor parent submitted a five-day disclosure to counsel for DCPS.  AR at

4

141: 8-10.

42.    On August 30, 2006, a Due Process Hearing was convened in front of Hearing Officer

Tonya Butler-Truesdale.  AR at 114-524.

43.    Hearing Officer Butler-Truesdale admitted parent's five-day disclosure into the record.

AR at 122: 17-21.

44.    Parent objected to admission of SAIL's five-day disclosure at the Hearing because the

disclosure was submitted late.  AR at 123: 21-124: 2.

45.    Hearing Officer Butler-Truesdale sustained parent's objection and excluded SAIL's five-

day disclosure as untimely.  AR at 126: 21-127: 4.

46.    SAIL renewed its second Motion to Join a Necessary Party, asking Hearing Officer

Butler-Truesdale to join DCPS as a party to the complaint.  AR at 132: 14-16; AR at 138:

15-144: 14.

47.    Counsel for DCPS was present at the commencement of the hearing, and opposed SAIL's

motion at the hearing to join DCPS as a necessary party.  AR at 141: 7-146: 13.

48.    Counsel for parent opposed SAIL's motion at the hearing to join DCPS as a necessary

party.  AR at 147: 1-156: 9.

49.    Hearing Officer Butler-Truesdale denied SAIL's Motion to Join a Necessary Party and

dismissed counsel for DCPS from the hearing.  AR at 5; AR at 118: 6-120: 2.

50.    Parent presented three witnesses, including Dr. James; Deborah Lourie; and parent.  AR

at 276: 9-346: 17; AR at 355: 4-373: 15; AR at 374: 1-477: 6.

51.    Dr. James testified that D.H., as a rising eighth grader, displayed academic skills

appropriate to second or fourth grade levels.  AR at 335: 11-13.

52.    Dr. James testified that D.H. was not making academic progress commensurate with

implementation of a full-time IEP.  AR at 333: 3-6.

53.    Counsel for SAIL cross-examined parent.  AR at  416: 15-474: 17.

54.    Counsel for SAIL waived his opportunity to cross-examine Dr. James.  AR at 492: 9-10.

55.    Counsel for SAIL waived the opportunity to cross-examine Deborah Lourie.  AR at 373: 2-5.

56.    Counsel for SAIL called Jenna Umansky as a rebuttal witness.  AR at 482: 6-504: 5.

57.    Counsel for SAIL did not attempt to call any other witnesses in rebuttal.  AR at 492.

58.    Counsel for SAIL waived the opportunity to make a closing argument.  AR at 492: 10-11.

59.    Counsel for SAIL requested that the record be left open for additional documents.  AR at 493: 8-9.

60.    Counsel for SAIL left the Hearing before its conclusion.  AR at 5; AR at 508: 11-12.

61    On September 1, 2006, SAIL submitted a Praecipe to the Hearing Officer.  AR at 725-738.

62.     September 6, 2006, parent submitted an opposition to the SAIL's Praecipe.  AR at 739-741.

63.    At the due process hearing, Hearing Officer Butler-Truesdale agreed to allow counsel for parent to submit a compensatory education plan after the hearing.  AR at 514: 6-9.

64.    On September 6, 2006, parent submitted a compensatory education plan to Hearing Officer Butler-Truesdale.  AR at 742-746.

65.    Parent also served a copy of the compensatory education plan to counsel for SAIL.  AR at 743.

66.    SAIL did not respond to parent's opposition to Praecipe or submission of the compensatory education plan.  AR at 12.

67.    On September 19, 2006, the Hearing Officer issued her Decision.  AR at 2-14.

68.    In reaching her Decision, Hearing Officer Butler-Truesdale considered both SAIL's

Praecipe and parent's compensatory education plan, submitted post-hearing, as a matter

of equity.  AR at 5.

69.    The HOD concluded that SAIL denied a free appropriate public education to D.H. by

failing to ensure that D.H. made progress in his academic program; by failing to ensure

the issuance of an appropriate notice of placement; and by failing to initiate SEA

participation when it was determined that D.H. could not derive educational benefit from

placement at SAIL.  AR at 8.

70.    The HOD concluded that SAIL's unilateral invitation of DCPS to participate in the July

14, 2006, resolution meeting did not make DCPS a necessary party to the action.  AR at

8-9.

71.    The HOD concluded that SAIL's unilateral invitation of DCPS to participate in the July

14, 2006 resolution meeting was a violation of parent's due process rights, as it was a

unilateral alteration of the resolution meeting agenda.  AR at 8-9.

72.    The HOD ordered SAIL to fund D.H. at the Katherine Thomas School, including

transportation services, for the 2006-2007 school year; ordered SAIL to fund 46 hours of

after-school tutoring in reading at Katherine Thomas School; ordered SAIL to fund 23

hours of after-school tutoring in study skills and organization at the Katherine Thomas

School; ordered SAIL to fund a Kurzweil 3000 Learn Station software and to fund

Inspiration or CoWriter or Write Out Loud software for D.H. within 30 days of his

enrollment at Katherine Thomas School; ordered SAIL to reimburse parent for attorneys'

fees and costs; and ordered SAIL to fund extended school year ("ESY") services for D.H.

at Katherine Thomas School, if an MDT/IEP team there determines such services are necessary.  AR at 11-12.

73.    The HOD concluded that parent was the prevailing party.  AR at 11.


Date: September 24, 2007

<div style="margin-left:auto; text-align:left;">

Respectfully Submitted
<u>/s/ Donna Wulkan</u>
Donna L. Wulkan
D.C. Bar No. 370961
1765 N Street, N.W.
Washington, DC 20036
202-682-3909
202-955-1015 (facsimile)
Attorney for Plaintiffs

</div>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **THE SCHOOL FOR ARTS** ) | |
| **IN LEARNING ("SAIL")** ) | |
| **PUBLIC CHARTER SCHOOL,** ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **Civil Action No. 06-1821 (TFH)** |
| ) | |
| **MICHELLE HAWKINS, et al.,** ) | |
| ) | |
| Defendants ) | |

<u>**ORDER**</u>

Upon consideration of Plaintiffs' Motion for Summary Judgment, Defendant Hawkins'

Opposition and Motion for Summary Judgment, Defendant Hawkins' Memorandum of Points

and Authorities and Statement of Material Facts as to Which There is No Genuine Issue, any

response thereto, and the entire record herein, it is this _____ day of _____, 2007,

hereby

**ORDERED** that Plaintiffs' Motion for Summary Judgment is DENIED; it is further

**ORDERED** that Defendant Hawkins' Motion for Summary Judgment is GRANTED; it

is further

**ORDERED** that the Hearing Officer's Decision in this matter is upheld; it is further

**ORDERED** that Plaintiff immediately comply with all provisions of the HOD, including

tuition funding for the 2006-2007 school year and 2007-2008 school year; ESY funding;

compensatory education funding in the form of 46 hours of after-school tutoring in reading at

Katherine Thomas School, 23 hours of after-school tutoring in study skills and organization at

the Katherine Thomas School, Kurzweil 3000 Learn Station software, and Inspiration or

CoWriter or Write Out Loud software; and payment of the awarded attorneys' fees for prevailing

at the due process hearing; it is further

**ORDERED** that Plaintiff reimburse the Defendant for reasonable attorney's fees and costs for litigating the Preliminary Injunction to ensure D.H.'s placement, and for litigating the instant matter.

**SO ORDERED**.

_____
The Honorable Thomas F. Hogan
United States District Court Judge

CC:    Electronic copies served on all parties.



**The Katherine Thomas School**

# TLC
The Treatment and Learning Centers

9975 Medical Center Drive
Rockville, Maryland 20850
301.738.9691
Fax 301.738-8897
TTY 301.424.5203
www.ttlc.org

October 17, 2006

Mr. Lawrence Riccico
Chief Executive Officer
SAIL Public Charter School
1100 16th Street, NW
Washington, DC 20036

RE: Dominique Hawkins

Dear Mr. Riccico:

Attached is a copy of the District of Columbia Public Schools Hearing Officer's Decision for Dominique Hawkins. According to the decision, SAIL Public Charter School is to fund Dominique Hawkins at The Katherine Thomas School for the 2006-2007 school year.

Enclosed is an invoice for Dominique's tuition & related services for the period August 28, 2006 to September 30, 2006. The total amount due for through September is $4,414.30. Please make your check payable to TLC - The Katherine Thomas School within 10 days of receipt. In the future, monthly invoices will be sent by the 5th day following the month of service.

Feel free to call either myself at 301-424-5200 ext. 122 or Suellyn Sherwood at 240-813-6927 if you have any questions.

Very truly yours,

Richard J. Paylin
Executive Director

Enclosure

Cc:    Donna Wulkan, Esquire
        Paul Dalton, Esquire
        Quinne Harris-Lindsey, Esquire/DCPS
        Josephine Baker, DC Public Charter School Board
        Raymond Baldwin, Esquire

*An Independent Day School for Students with Learning and Language Disabilities*

The Outcomes Service · The Family Hearing Center · The Katherine Thomas School
The Early Learning Center · The Outpatient Services · The Testing and Tutoring Service · Camp Littlefoot



EXHIBIT
1

**MONTHLY INVOICE:**

Address: The Katherine Thomas School
9875 Medical Center Drive
Rockville, MD 20850

Tax ID #: 52-0807924

Invoice For: Dominique Hawkins

Month of Service: Period August 28, 2006 - September 30, 2006

Per Diem Tuition Rate     $     146.20

| Student Name | | | | Program Information | | | Occupational Therapy $102 | | Physical Therapy $102 | | Speech $94 | | Counseling $98 | | TOTAL COST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | DOB | DCPS ID# | Days Attended | Rate/Hour | Tuition | Units of Service | Total Cost | Units of Service | Total Cost | Units of Service | Total Cost | Units of Service | Total Cost | |
| Hawkins | Dominique | 8/28/1992 | 9038030 | | $ - | $ | | $ | | $ | | $ | | $ | |
| August, 2006 | | | | 4 | | $ 584.80 | 1 | $ 102.00 | | | 1 | $ 94.00 | | | $ 780.80 |
| September, 2006 | | | | 20 | | $ 2,924.00 | 3.5 | $ 357.00 | | | 3.75 | $ 352.50 | | | $ 3,633.50 |
| | | | | | | | | | | | | | | $ - | $ - |
| | | | | | | | | | | | | | | $ - | $ - |
| | | | | | | | | | | | | | | $ - | $ - |
| | | | | | | | | | | | | | | $ - | $ - |
| | | | | | | | | | | | | | | $ - | $ - |
| **TOTAL:** | | | | | | $ 3,508.80 | 4.5 | $ 459.00 | 0 | $ - | 4.75 | $ 446.50 | | $ - | $ 4,414.30 |

**NOTES:**

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Lawrence Riccico
Chief Executive Officer
SAIL Public Charter School
1100 16th Street, N.W.
Washington, D.C.   20036

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)
B. Date of Delivery
10/19/06

C. Signature
X _Serverine_
☐ Agent
☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☑ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
7839.

PS Form 3811, July 1999    Domestic Return Receipt    102595-00-M-0952



Rockville, Maryland 20850
301.738.9691
Fax 301.738-8897
TTY 301.424.5203
www.ttlc.org

November 16, 2006

Mr. Lawrence Riccico
Chief Executive Officer
SAIL Public Charter School
1100 16th Street, NW
Washington, DC 20036

RE: Dominique Hawkins

Dear Mr. Riccico:

Enclosed is an invoice for Dominique's tuition & related services for the month of October 2006. The total amount due for October is $3,803.20. Please make your check payable to TLC - The Katherine Thomas School within 10 days of receipt.

Feel free to call me at 240-813-6927 if you have any questions.

Sincerely,

Suellyn Sherwood
Director of Operations

Enclosure

---

*An Independent Day School for Students with Learning and Language Disabilities*

The Outcomes Service · The Family Hearing Center · The Katherine Thomas School
The Early Learning Center · The Outpatient Services · The Testing and Tutoring Service · Camp Littlefoot



EXHIBIT
2

**MONTHLY INVOICE:**

Address: The Katherine Thomas School
9875 Medical Center Drive
Rockville, MD 20850

Tax ID #: 52-0807824

Invoice For: Dominique Hawkins

Month of Service: Period October, 2006

Per Diem Tuition Rate: $ 148.20

| Student Name | | | | Program Information | | | Occupational Therapy $102 | | Physical Therapy $102 | | Speech $94 | | Counseling $98 | | TOTAL COST |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Last Name | First Name | DOB | DCPS ID# | Days Attended | Rate/Hour | Tuition | Units of Service | Total Cost | Units of Service | Total Cost | Units of Service | Total Cost | Units of Service | Total Cost | |
| Hawkins | Dominique | 8/26/1992 | 9030030 | | | - | | | | | | | | | |
| October, 2006 | | | | 21 | | $ 3,070.20 | 3.5 | $ 357.00 | | | 4 | $ 376.00 | | | $ 3,803.20 |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| | | | | | | | | | | | | | | $ | - |
| **TOTAL** | | | | | | $ 3,070.20 | 3.5 | $ 357.00 | 0 | $   - | 4.00 | $ 376.00 | | $   - | $ 3,803.20 |

NOTES:

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Mr. Lawrence Riccico
Chief Executive Officer
SAIL Public Charter School
1100 16th Street, N.W.
Washington, D.C. 20036

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)   B. Date of Delivery

C. Signature
X                                        ☐ Agent
                                         ☐ Addressee

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

3. Service Type
☑ Certified Mail      ☐ Express Mail
☐ Registered          ☐ Return Receipt for Merchandise
☐ Insured Mail        ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)            ☐ Yes

2. Article Number (Copy from service label)    6223

PS Form 3811, July 1999        Domestic Return Receipt        102595-00-M-0952

Law office of
**DONNA L. WULKAN**
1765 N Street, N.W.
Carriage House
Washington, D.C. 20036
——
(202) 682-3909
telecopier (202) 955-1015

September 28, 2006

Paul Dalton
Dalton, Dalton & Houston, PC
1008 Pendleton Street
Alexandria, VA 22314

BY FAX AND MAIL

Re:    Dominique Hawkins
DOB: 08/28/92

Dear Mr. Dalton:

On September 19, 2006, Hearing Officer Tonya Butler-Truesdale issued a Hearing
Officer's Decision in the Matter of Dominique Hawkins in which she made the following
Conclusion of Law: "Petitioner is the prevailing party in this proceeding." See Attachment A at
10. Pursuant to 20 U.S.C. § 1415, Hearing Officer Butler-Truesdale went on to order
Respondent SAIL to reimburse Petitioner for all reasonable attorneys' fees. Id.

Attached to this letter is a copy of a bill indicating the work performed by my office in
preparation for and during Dominique's due process hearing. See Attachment B. Please forward
payment of this invoice to my office immediately. Thank you for your prompt attention to this
matter.

Sincerely,

Donna Wulkan, Esq.


EXHIBIT
**3**

Law Office of Donna L. Wulkan
1765 N Street
Carriage House
Washington, DC 20036

Invoice submitted to:
SAIL Public Charter School

September 27, 2006

In Reference To: Dominique Hawkins

Invoice #12395

Professional Services

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 5/8/2006 | DLW | Case review with GMB | 0.17<br>405.00/hr | 68.85 |
| 5/11/2006 | DLW | Case conference with GMB re: school placement. | 0.67<br>405.00/hr | 271.35 |
| | DLW | Reviewed IEP and documents and evaluations. | 1.33<br>405.00/hr | 538.65 |
| 5/16/2006 | DLW | Telephone conference with GMB re: school placements, expert witnesses. | 0.50<br>405.00/hr | 202.50 |
| | DLW | Telephone conference with client re: school placement and expert witnesses. | 0.25<br>405.00/hr | 101.25 |
| 5/31/2006 | GMB | Telephone conference with client re:new eval. | 0.25<br>195.00/hr | 48.75 |
| 6/1/2006 | GMB | Drafted email to client re: eval. | 0.17<br>195.00/hr | 33.15 |
| | DLW | Case review with GMB re: new eval. | 0.17<br>405.00/hr | 68.85 |
| | DLW | Read neuropsych. eval. | 1.33<br>405.00/hr | 538.65 |
| | DLW | Read e-mails from parent re: school placement. | 0.75<br>405.00/hr | 303.75 |

SAIL Public Charter School                                                          Page    2

|  |  |  | Hrs/Rate | Amount |
|---|---|---|---|---|
| 6/5/2006 | GMB | Drafting Due Process Hearing Request. | 0.50<br>195.00/hr | 97.50 |
| 6/9/2006 | GMB | Telephone conference with client re: visit to SAIL. | 0.33<br>195.00/hr | 64.35 |
| 6/14/2006 | DLW | Case conference with GMB. | 0.33<br>405.00/hr | 133.65 |
| 6/15/2006 | GMB | Drafting Hearing Request. | 0.50<br>195.00/hr | 97.50 |
|  | GMB | Drafting hearing request. | 0.50<br>195.00/hr | 97.50 |
|  | GMB | Reviewed 06-07 IEP. | 0.17<br>195.00/hr | 33.15 |
| 6/16/2006 | DLW | Read 2005 speech and language evaluation. | 1.00<br>405.00/hr | 405.00 |
|  | DLW | Revised hearing request. | 0.75<br>405.00/hr | 303.75 |
| 6/19/2006 | GMB | Edited hearing request. | 0.33<br>195.00/hr | 64.35 |
| 6/21/2006 | DLW | Case review with GMB re: hearing request. | 0.33<br>405.00/hr | 133.65 |
| 6/23/2006 | DLW | Telephone conference with client re: hearing request. | 0.50<br>405.00/hr | 202.50 |
| 6/30/2006 | DLW | Read emails regarding Dr. James' evaluation | 0.67<br>405.00/hr | 271.35 |
| 7/5/2006 | GMB | Read correspondence with evaluator. | 0.17<br>195.00/hr | 33.15 |
| 7/7/2006 | DLW | Read SAIL Motion to dismiss | 0.33<br>405.00/hr | 133.65 |
|  | DLW | Read DC Case Law on Charter Schools | 1.50<br>405.00/hr | 607.50 |
|  | DLW | Consultation with SB re: response to SAIL motion to dismiss | 1.00<br>405.00/hr | 405.00 |
|  | SB | Researched case law and regulations and began drafting response to Motion to Dismiss | 2.00<br>115.00/hr | 230.00 |

SAIL Public Charter School                                                                    Page    3

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/8/2006 | DLW | Teleconference with client regarding resolution meeting and motion to dismiss and school placements | 0.75 405.00/hr | 303.75 |
| 7/10/2006 | GMB | Telephone conferences with SAIL, DW and client re: resolution session. | 0.42 195.00/hr | 81.90 |
| | GMB | Case review with SB and client re: opposition to Motions to dismiss. | 0.25 195.00/hr | 48.75 |
| | DLW | Read DC Motion to dismiss | 0.50 405.00/hr | 202.50 |
| | DLW | Consultation with GMB re: Motions to dismiss | 1.00 405.00/hr | 405.00 |
| | SB | Drafted Opposition to Motion to Dismiss | 4.00 115.00/hr | 460.00 |
| | DLW | Reviewed Plaintiff's opposition to motion to dismiss | 1.75 405.00/hr | 708.75 |
| 7/11/2006 | DLW | Case conference regarding resolution meeting preparation | 1.00 405.00/hr | 405.00 |
| | DLW | Teleconference with client re: Resolution meeting regarding Motions from DCPS and SAIL | 0.58 405.00/hr | 234.90 |
| | SB | Drafting opposition to motion to dismiss | 3.00 115.00/hr | 345.00 |
| 7/12/2006 | SB | Revised opposition to motion to dismiss | 2.00 115.00/hr | 230.00 |
| 7/13/2006 | DLW | Revised Motion To Dismiss | 1.83 405.00/hr | 741.15 |
| | DLW | Read Dr. James' evaluation | 2.00 405.00/hr | 810.00 |
| | DLW | Teleconference with client re: resolution meeting, legal motions to dismiss, hearing strategy and school visits | 1.33 405.00/hr | 538.65 |
| 7/14/2006 | DLW | Preparation for Resolution meeting | 1.17 405.00/hr | 473.85 |
| | DLW | Resolution Meeting at SAIL | 0.50 405.00/hr | 202.50 |
| | DLW | Reviewed Resolution meeting notes | 0.50 405.00/hr | 202.50 |

SAIL Public Charter School                                                                            Page    4

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 7/18/2006 | DLW | Read resolution notes ( SAIL & DCPS), read motion to dismiss. Case conference with SB re: Scheduling hearing resolution meeting outcome | 2.00<br>405.00/hr | 810.00 |
| 7/20/2006 | SB | Drafted letter to Paul Dalton re: response to Hearing Officer's decision on their motion to dismiss | 5.50<br>115.00/hr | 632.50 |
| 7/26/2006 | GMB | Telephone conference with client re: visit to Katherine Thomas. | 0.50<br>195.00/hr | 97.50 |
| 8/1/2006 | DLW | Read Dalton motion to join | 0.50<br>405.00/hr | 202.50 |
| | DLW | Consultation with GMB regarding response to motion, hearing schedule and placement issues | 1.25<br>405.00/hr | 506.25 |
| | SB | Drafting Response to Motion to Join DCPS | 0.50<br>115.00/hr | 57.50 |
| | SB | Drafted letter to Dr. Peagler re: nature of Aug. 8th meeting | 0.50<br>115.00/hr | 57.50 |
| 8/2/2006 | SB | Drafting reponse to motion to join | 1.75<br>115.00/hr | 201.25 |
| | SB | Edited response to Motion to Join | 0.75<br>115.00/hr | 86.25 |
| 8/4/2006 | DLW | Edited, Revised and finalized motion responding to motion to join | 2.50<br>405.00/hr | 1,012.50 |
| 8/7/2006 | DLW | Teleconference with client regarding status of due process hearing | 0.42<br>405.00/hr | 170.10 |
| 8/8/2006 | DLW | Preparation for teleconference with DCPS and SAIL | 1.00<br>405.00/hr | 405.00 |
| | DLW | Teleconference with DCPS ( Dr. Peagler and Paul Dalton) | 0.67<br>405.00/hr | 271.35 |
| | DLW | Teleconference with client regarding teleconference | 0.50<br>405.00/hr | 202.50 |
| | DLW | Reviewed DCPS meeting notes | 0.42<br>405.00/hr | 170.10 |
| 8/11/2006 | DLW | Teleconference with  client. | 0.42<br>405.00/hr | 170.10 |
| 8/14/2006 | DLW | Reviewed emails regarding placement | 1.08<br>405.00/hr | 437.40 |

SAIL Public Charter School                                                                           Page    5

| Date | | Description | Hrs/Rate | Amount |
|---|---|---|---|---|
| 8/16/2006 | GMB | Telephone conference with client re: unilateral placement funding and letter.  Reviewed letter. | 0.25 195.00/hr | 48.75 |
| 8/17/2006 | DLW | Draft notice letter to DCPS and SAIL | 0.33 405.00/hr | 133.65 |
| | GMB | Telephone conference with client re: unilateral placement letter. | 0.17 195.00/hr | 33.15 |
| 8/21/2006 | GMB | Drafting 5-day letter. | 0.33 195.00/hr | 64.35 |
| | DLW | prepared documents for 5 Day | 1.33 405.00/hr | 538.65 |
| 8/22/2006 | GMB | Telephone conference with client re: witnesses and school update. | 0.33 195.00/hr | 64.35 |
| 8/23/2006 | GMB | Drafting 5-day letter. | 0.50 195.00/hr | 97.50 |
| | GMB | Edited letter, obtained new documents, completed preparation of 5-day, filed, faxed 2 new documents. | 2.50 195.00/hr | 487.50 |
| | GMB | Telephone conferences with client re: 5-day. | 0.17 195.00/hr | 33.15 |
| 8/25/2006 | GMB | Read Charter School Briefs. | 0.50 195.00/hr | 97.50 |
| | GMB | Read caselaw on charter school responsibility for FAPE. | 0.50 195.00/hr | 97.50 |
| | GMB | Drafting Questions for Dr. JAmes. | 1.00 195.00/hr | 195.00 |
| | DLW | Outlined due process hearing issues and reviewed motions to join necessary party and resolution meeting notes and prepared for witness questions. | 2.00 405.00/hr | 810.00 |
| 8/27/2006 | DLW | Researched and read DCPS and plaintiffs Blackman briefs on charter schools | 2.25 405.00/hr | 911.25 |
| 8/28/2006 | DLW | Telephone conference with client re hearing preparation and case strategy. | 1.25 405.00/hr | 506.25 |
| | DLW | Draft direct and cross exam questions for four witnesses | 1.75 405.00/hr | 708.75 |
| | DLW | Teleconference with client re: hearing preparation. | 0.33 405.00/hr | 133.65 |

SAIL Public Charter School                                                                                          Page      6

| Date | | Description | Hrs/Rate | Amount |
|------|------|-------------|----------|--------|
| 8/29/2006 | GMB | Briefed charter school cases and prepared undisclosed documents. | 0.50 195.00/hr | 97.50 |
| | DLW | Prepared witnesses for testimony and reviewed 5 Day documents to prepare for heaing | 2.42 405.00/hr | 980.10 |
| | DLW | Read cases and regulations on charter schools | 2.33 405.00/hr | 943.65 |
| | DLW | Reviewed witness questions and prepared testimony | 1.50 405.00/hr | 607.50 |
| 8/30/2006 | DLW | Due Process Hearing. Butler-Truesdale, Hearing Officer | 6.00 405.00/hr | 2,430.00 |
| 9/1/2006 | DLW | Read Paul Dalton praecipe and brief and submission to hearing officer | 1.33 405.00/hr | 538.65 |
| 9/3/2006 | DLW | Teleconference with client regarding draft comprehensive education plan | 1.17 405.00/hr | 473.85 |
| 9/5/2006 | SB | Researched and drafted response to Paul Dalton's Post-hearing filings and waiver of closing argument | 6.00 115.00/hr | 690.00 |
| | SB | Telephone conference with client re: comp ed plan | 0.33 115.00/hr | 37.95 |
| | SB | Edited response to Paul Dalton | 0.50 115.00/hr | 57.50 |
| | DLW | Revised submission to hearing officer in opposition to filing by Dalton and compensatory education plan submission | 0.50 405.00/hr | 202.50 |
| | SB | Filed Comp ed plan and reponse to SAIL filing with Defendants and Student Hearing Office. | 0.33 115.00/hr | 37.95 |
| 9/19/2006 | DLW | Read HOD | 1.00 405.00/hr | 405.00 |
| 9/20/2006 | GMB | Drafting letter to KT School and Telephone conference with client re: Hearing Officer's Determination. | 0.67 195.00/hr | 130.65 |
| 9/21/2006 | GMB | Read rules on complaints and answers re: timing of answer and waiver of service. | 0.17 195.00/hr | 33.15 |
| | DLW | Consultation with GMB re: HOD | 1.33 405.00/hr | 538.65 |
| | DLW | Teleconference with Paul Dalton regarding Appeal | 0.17 405.00/hr | 68.85 |

SAIL Public Charter School                                                          Page    7

| | | | Hrs/Rate | Amount |
|---|---|---|---|---|
| 9/25/2006 | GMB | Read transcript regulations and drafted transcript request to Student Hearing Office. | 0.50 195.00/hr | 97.50 |
| 9/26/2006 | SB | Drafted fee demand letter to Paul Dalton | 0.50 115.00/hr | 57.50 |
| | SB | Edited fee demand letter to Paul Dalton | 0.17 115.00/hr | 19.55 |
| | DLW | Case review with GMB re: appeal, attorney's fees bill, payment for placement, Hearing Officer's Determination. | 1.00 405.00/hr | 405.00 |
| | DLW | Telephone conference with client re: Hearing Officer's Determination, payment, and appeal. | 0.67 405.00/hr | 271.35 |
| | | | 103.92 | $31,459.10 |

Additional Charges :

| | | | |
|---|---|---|---|
| 8/30/2006 | DLW | Parking fee for hearing | 13.00 |
| 9/27/2006 | DLW | Fax Charges | 16.50 |
| | DLW | Photocopies | 113.50 |
| | DLW | Postage Expense | 9.06 |
| | DLW | Local Deliveries | 28.00 |
| | Total costs | | $180.06 |
| | Total amount of this bill | | $31,639.16 |
| | Balance due | | $31,639.16 |

# FAX TRANSMISSION

Law office of

### DONNA L. WULKAN
1765 N Street, N.W.
Carriage House
Washington, D.C. 20036

———

(202) 682-3909
telecopier (202) 955-1015

**To:**    Paul Dalton                          **Date:**    September 28, 2006
703-739-2323

**CC:**                                          **Pages:** 22 including this cover sheet.

**From:**   Donna Wulkan

**Re:**     Dominique Hawkins

Attached please find the request for the payment of attorneys' fees. Thank you for your prompt attention to this matter.

The information contained in this telefacsimile message is transmitted by an attorney. It is privileged and confidential, intended for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If this communication has been received in error, please notify us immediately by telephone, collect if necessary, and return the original message to us at the above address via first class mail (we will reimburse postage). Thank you.

# Message Confirmation Report

## SEP-28-2006 11:26 AM THU

Fax Number  :  2029551015
Name        :  LAW OFFICE

```
Name/Number   :  17037392323
Page          :  22
Start Time    :  SEP-28-2006 11:23AM THU
Elapsed Time  :  02'52"
Mode          :  STD ECM
Results       :     [O.K]
```



Law office of
**DONNA L. WULKAN**
1765 N Street, N.W.
Carriage House
Washington, D.C.  20036
———
(202) 682-3909
telecopier (202) 955-1015

November 27, 2006

Paul Dalton
Dalton, Dalton & Houston, PC
1008 Pendleton Street
Alexandria, VA 22314

BY FAX AND MAIL

Re:    Dominique Hawkins
DOB:  08/28/92

Dear Mr. Dalton:

I am writing to follow-up on my letter dated September 28, 2006 regarding payment of attorneys' fees in the matter of Dominique Hawkins.  That letter requested payment of attorneys' fees pursuant to the September 19, 2006 HOD issued in this matter.  That letter included an invoice of work performed in this matter, which totaled $31,459.10 in fees and $180.06 in costs. A copy of that invoice is attached again here.

Please forward payment of this invoice to my office immediately. If I do not receive this payment by December 15, 2006, further legal action will be required.  Thank you for your prompt attention to this matter.

Sincerely,

Donna Wulkan, Esq.





The Treatment and
Learning Centers

# TLC

*a family of services where caring comes first*

2301 Research Blvd., Suite 110
Rockville, Maryland 20850
301.424.5200
Fax 301.424.8063
TTY 301.424.5203
www.ttlc.org

November 16, 2006

Ms. Quinne Harris-Lindsey Esq.
Office of the General Counsel
District of Columbia Public Schools
825 North Capitol Street, N.E.   9th Floor
Washington, D.C.  20002

Dear Ms. Harris-Lindsey; RE: SAIL Charter School

As we discussed when I phoned last week, the SAIL Charter School has not responded to payment requests for Dominique Hawkins, a student who by order of Due Process Hearing Officer Tonya Butler-Truesdale on September 19, 2006 was placed at the Katherine Thomas School with funding from the SAIL Charter School.

Accordingly, we will have to discharge Dominique Hawkins for lack of payment unless SAIL Charter school immediately pays the outstanding balance of $7,917.50 by December 1, 2006 and makes arrangements to pay the remaining tuition each month when due.

Please contact the Director of Operations, Suellyn Sherwood at 301 424 5200, ext 6927, if you need further information.

Very truly yours,

Richard J. Pavlin
Executive Director

cc. M. Hawkins
    D. Wulkan, Esq.
    P. Dalton, Esq.
    T. Butler-Truesdale, Esq
    J. Baker
    R. Baldwin, Esq

---

*A Private Non-profit Agency Enabling Children and Adults to Develop their Full Potential*

The Outcomes Service • The Family Hearing Center • The Katherine Thomas School
The Early Learning Center • The Outpatient Services • The Testing and Tutoring Service • Camp L

**EXHIBIT**
**5**